## Pelecovich Unemployment Compensation Case.

Argued October 2, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Harry A. Pelecovich,* appellant, in propria persona, submitted a brief.

*William L. Hammond,* Special Deputy Attorney General, with him *Robert E. Woodside,* Attorney General, for appellee.

OPINION BY GUNTHER, J., January 20, 1953:

In this unemployment compensation case claimant appeals from the Board's denial of benefits which was based on claimant's unavailabilty for work within the meaning of §401(d) of the Unemployment Compensation Law.

Harry Pelecovich was last employed by the Forest Hills Motor Company as a mechanic until November 16, 1951, his last day of work. Claimant had been attending classes at the University of Pittsburgh since the summer of 1951, and his employer, to enable claimant to continue his work and attend school at the same time arranged the following work schedule for claimant.

|           | Work Schedule       | Class Schedule          |
|-----------|---------------------|-------------------------|
| Monday    | 8 a.m. to 5 p.m.    | 6 p.m. to 9 p.m.        |
| Tuesday   | 8 a.m. to 1 p.m.    | 2:30 p.m. to 3:30 p.m.  |
| Wednesday | No work             | 8:30 a.m. to 3:30 p.m.  |
| Thursday  | 8 a.m. to 1 p.m.    | 2:30 p.m. to 3:30 p.m.  |
| Friday    | 8 a.m. to 5 p.m.    | No classes              |
| Saturday  | 8 a.m. to 5 p.m.    | No classes              |

On November 16, 1951, claimant was discharged by his employer because adherence to such schedule did not work out satisfactorily from the standpoint of completing assigned work. The employer testified: ". . . About a month before Harry was fired, the service manager came to me and said it was becoming more difficult for him to correlate his work to Harry's schedule. On his days when he went to school, Harry would punch out at 10:30, 11:00 or 12:00. The manager might be on a road test and come back in and maybe the job Harry was on was done, or maybe it wasn't. The customer would generally pick the car up at 5:00 and it would involve putting another mechanic on the job. Even if the job was completed, Harry would have left and there was no way of knowing if the job was completed or not. That was a month before Harry was fired. At that time my instructions to the service manager was to talk this matter over with Harry, to see if he could inform the service manager what he had done to the car. Two, three weeks after that, the service manager came and said the condition still prevailed. The third time he brought it to my attention, I recommended to my father we let Harry go. Near the end of his employ he was absent entirely and the other half day he quit at 11:00 or 11:30 in the morning . . .". And as to his irregularity in attendance at work, his employer had this to say: ". . . We arranged a schedule to permit him to go to school, but he didn't hold up to his end of it. Monday, September 17, he left 3:01 in the

afternoon. Saturday, September 22, an hour and a half. I think he was asked to work that full day. Monday, September 24, just two days later, an hour and 8/10 off. Tuesday, September 25, one hour off. Then Saturday, September 29, he left at 3:00 in the afternoon. Friday, October 12, was not in at all. Tuesday, November 6, two hours—left at 10:08 in the morning. Tuesday, November 13, two hours. The point is, we could never depend upon him. Our Shop foreman would lay out his work and the first thing we knew, he was gone without making any excuse or anything else."

In the instant case, claimant was not available for work by choice although his employer was most desirous of helping claimant have work that would not conflict with his class schedule. The testimony clearly establishes that claimant demonstrated the limitation he placed upon his employability by not adhering to the work schedule and walking off the job at will without informing his employer of the status of his assigned work. In these circumstances, there is abundant evidence to support the finding of the Board that he did not meet the requirements of §401(d) for the reason that claimant has excluded a substantial number of working hours and has not shown that a labor market exists for his services, i.e., that reasonable opportunities for employment exist during the few remaining hours. School attendance is a matter of personal choice rather than a necessity, exclusion of work because of such attendance is without good cause, and requirements of §401(d) have not been met. The Board did not err in so concluding. Cf. *Pinto Unemployment Compensation Case,* 168 Pa. Superior Ct. 540, 79 A. 2d 802; *Sturdevant Unemployment Compensation Case,* 158 Pa. Superior Ct. 548, 45 A. 2d 898.

Decision affirmed.