WENDEL KRAUSS, PLAINTIFF-RESPONDENT, v. A. & M. KARAGHEUSIAN, INC., DEFENDANT-APPELLANT.

Argued September 14, 1953—Decided November 2, 1953.

448

Mr. *Martin J. Kole* argued the cause for appellant.

*Mr. Sol D. Kapelsohn* argued the cause for respondent (*Messrs. Kapelsohn, Lerner, Leucher & Reitman,* attorneys; *Mr. Harold A. Ackerman* on the brief).

*Mr. Clarence F. McGovern* argued the cause for Board of Review, Division of Employment Security, Department of Labor and Industry.

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J. The Division of Employment Security allowed plaintiff's claim for unemployment compensation. Upon the employer's appeal, an Appeal Tribunal, after hearing, found that it did not appear that plaintiff was "available for work" as required by *R. S.* 43:21-4(*c*) and therefore held him to be "ineligible" for benefits. The Board of Review, on plaintiff's appeal, reviewed the Appeal Tribunal's decision on the record made before that body, reversed it, and allowed the claim. The employer appealed to the Superior Court, Appellate Division, which sustained the Board of Review. 24 *N. J. Super.* 277 (1953). We allowed certification on the employer's petition. 12 *N. J.* 351 (1953).

Plaintiff worked for defendant for 22 years. During the last 15 years of his employment he was a pump operator stationed in a cold, wet place full of heavy odors from wet washed wool. On January 12, 1951, at the age of 68 years, he voluntarily quit the defendant's employ. He has since received a monthly pension of $10.90 under the terms of a pension agreement entered into between plaintiff's union and the employer, which agreement became effective 11 days earlier on January 1, 1951. The agreement allowed an employee then 68 years of age the option of retiring on pension, or, if the union and the company agreed, to continue in his employment. The pension fund is provided by the employer without contribution by employees. The plaintiff is also receiving social security benefits of $93 per month.

The Appeal Tribunal and the Board of Review disagreed as to plaintiff's reason for quitting. The Appeal Tribunal found that it was "to take a pension." The Board of Review

concluded that "headaches and other ailments" due to exposure to the cold and wet caused him to leave. The Appellate Division considered that the board's finding should not be disturbed, as in its view there "was competent evidence undersetting the finding." Our own study of the record persuades us, however, that in this instance it is appropriate that we make an independent finding. *R. R.* 1:5-3(*a*).

Plaintiff's uncorroborated word is the only evidence to support his assertion that illness was the reason he quit. Several of his own admissions, however, taken with the other evidence in the record and considered in the light of his retirement so shortly after the effective date of the pension agreement, demonstrate that illness was not the reason. He admitted that he did not consult a physician at any time, or ever complain of his work conditions or ask to be transferred to other work. His employment records show that he lost virtually no time from work over several years. He testified, but the personnel manager denied, that he told the personnel manager on two occasions that the work was causing him headaches and that for that reason he could not go on. It is significant that he admitted that on both occasions, the first several months earlier and the second a week before he quit, he discussed retirement with the personnel manager. He admitted also that on another occasion he had sought to be laid off to qualify him for unemployment compensation. After he left he remained idle for several months before starting to look for other work. He stated at the hearing that he would not return to defendant's employ in his old job or in any other job. It is noted that under the terms of the pension agreement pension payments cease if the pensioner accepts reemployment with the company. We are satisfied, and find, that plaintiff did not leave because of illness but that he elected the alternative which was his under the pension agreement to retire and to take the pension, knowing that he was also eligible for social security benefits.

Unemployment benefits are not allowable unless the claimant meets the conditions for "eligibility" provided

in *R. S.* 43:21–4 and is not "disqualified" for any of the reasons set forth in *R. S.* 43:21–5. "Eligibility" has relation to "a status indispensable to the operation of the act," *Muraski v. Board of Review*, 136 *N. J. L.* 472 *(Sup. Ct.* 1948) ; "disqualification" is the penalty suffered by an otherwise eligible claimant involved in any of the specific affirmative acts enumerated in subsection 5. The distinction has importance in the instant case since a claimant who has voluntarily left work without good cause is "disqualified" for benefits under the New Jersey statute. Under the laws of a number of other states, such a claimant is "ineligible" for benefits. Of the several eligibility criteria in *R. S.* 43:21–4 we are here concerned only with subsection 4 (*c*) providing that it must appear that the claimant is "able to work, is available for work, and has demonstrated that he is actively seeking work," and, more particularly, with the requirement that the claimant must be "available for work." The disqualification provision involved, subsection 5 (*a*), provides that an individual shall be disqualified for benefits "for the week in which he has left work voluntarily without good cause, and for each week thereafter until he has earned in employment * * * at least four times his weekly benefit rate * * *."

The Unemployment Compensation Act provides social insurance, for the common good as well as in the interest of the unemployed individuals, against the distress of involuntary unemployment for those individuals who have ordinarily been workers and would be workers now but for their inability to find suitable jobs. *Ludwigsen v. N. J. Department of Labor and Industry*, 12 *N. J.* 64 (1953) ; *W. T. Grant Co. v. Board of Review*, 129 *N. J. L.* 402 *(Sup. Ct.* 1943) ; *Valenti v. Board of Review*, 4 *N. J.* 287 (1950) ; *cf. Workmen's Compensation Act, R. S.* 34:15–1 *et seq., Nagy v. Ford Motor Co.*, 6 *N. J.* 341 (1951). The provisions for eligibility and disqualification are purposed to preserve the fund for the payment of benefits to those individuals and to protect it against the claims of others who would prefer benefits to suitable jobs. The basic policy of

the law is advanced as well when benefits are denied in improper cases as when they are allowed in proper cases. The contest of a claim before the agency is not, therefore, an adversary proceeding in the usual sense. The statutory scheme commits the administration of the eligibility and disqualification provisions to the Division of Employment Security, which is clothed with broad investigatory powers and the power of subpoena to enable its personnel charged with original and appellate determinations to get the facts necessary to a proper decision in each case. Each employing unit is required to keep employment records containing information prescribed by the agency, and these records may be inspected and copied by the agency. *R. S.* 43:21–11(*g*). Such information may not "be published or be open to public inspection * * * in any manner revealing the employing unit's identity, but any claimant at a hearing before an appeal tribunal, the commission or the board of review, shall be supplied with information from such records to the extent necessary for the proper presentation of his claim."

The briefs contain much argument as to the respective burdens of proof of claimant and employer upon the several issues raised before the agency. But the matter of burden of proof must necessarily be viewed in the light of the superior position in which the statute places the agency to enable it to know and get the facts to assure the correct discharge of its duty properly to allow or disallow benefits. The interested parties should ordinarily be expected to furnish the information required to determine the claimant's eligibility and whether there are any disqualifying factors. When this plaintiff's claim was filed, the original determination upon the claimant's eligibility was made without prior notice to the employers to be affected by a favorable determination. They were first entitled to be heard upon appeal. *R. S.* 43:21–6. An amendment to the section by *L.* 1952, *c.* 187, *p.* 624, effective with respect to benefit years commencing on or after January 1, 1953, now requires the "deputy" who is to make the initial determination first to notify the

affected employers and require them to furnish him with such information as may be necessary to determine the claimant's eligibility and his benefit rights with respect to the particular employer. If any employer fails to comply with the request for information the deputy may rely entirely upon information from other sources, including an affidavit of the claimant, in which case the initial determination and any subsequent determination thereunder is incontestable by the non-complying employer to the extent provided by the amendment.

Plainly the statute casts upon the agency, as respects both original and appellate determinations, the role actively to press the interested parties to produce all relevant proofs at their command and, when necessary, independently to take steps to get the facts, as, for example, when the record made by the parties is unsatisfactory or there is fair reason to doubt the reliability of the proofs as a basis for decision or the agency in any case has reason to believe that additional facts obtained and made part of the record on its own initiative will contribute to a correct result. See *Hagadone v. Kirkpatrick*, 154 *P.* 2d 181 (*Idaho Sup. Ct.* 1944), *Garcia v. Employment Stabilization Commission*, 161 *P.* 2d 972 (*Cal. Ct. App.* 1945).

In determining whether a claimant is entitled to benefits the "available for work" test under subsection 4 (*c*) is of first importance. "The availability requirement is a test to discover whether claimants would, in actuality, now be working, were it not for their inability to obtain work that is appropriate for them." *Altman, Availability for Work* (*Harv. Univ. Press* 1950), *p.* 259. The test is met if it appears that the "individual is willing, able and ready to accept suitable work which he does not have good cause to refuse, that is when he is genuinely attached to the labor market." Freeman, *Able to Work and Available for Work* (1945), 55 *Yale L. J.* 123, 124; *Reger v. Administrator, Unemployment Compensation Act*, 132 *Conn.* 647, 46 *A.* 2d 844 (*Sup. Ct. of Err.* 1946); *Ludwigsen v. N. J. Dept. of*

*Labor & Industry, supra; W. T. Grant Co. v. Board of Review, supra; Valenti v. Board of Review, supra.*

 The emphasis is upon the claimant's attachment to *the* labor market, not to a particular job or a particular employer, save as a claimant's refusal to accept an employer's offer of suitable work may bear on the question or as the market in a given area may consist principally or solely of job opportunities with a particular employer. The determination entails primarily a probe of the claimant's good-faith intention to work and "it should be evident that no single approach to availability can be satisfactory in all cases," *Altman, supra, p.* 131. Even though a voluntary quitting of work without good cause is reason for "disqualification," the claimant's act may also have a bearing upon his availability, depending upon the extent to which his act supports the inference of an intention to withdraw from the labor market. The retirement of an elderly employee to take a pension may well indicate that the man has withdrawn from the labor market. This, however, is but an inference subject to being overborne by other proofs showing that he has in fact a genuine attachment to the market.

We state below our reasons for concluding that plaintiff's leaving the defendant's employ to take the pension must be deemed a voluntary leaving without good cause resulting in his disqualification for benefits. The three tribunals below, however, viewed his act only in relation to his availability for work. The Board of Review was of the opinion that any inference therefrom against his availability was dispelled by other proofs, including plaintiff's testimony that he returned to the labor market in July and on three days each week until the date of the hearing sought work at a number of factories in the Elizabeth area.

The claimant's will to put his skills to work, the genuineness of his attachment to the labor market, is to be discovered in the evidence of what he does to find, or his conduct toward, opportunities for employment in suitable work. We have here only the plaintiff's unsupported word that he made efforts to find work. The board did not require that he

produce corroborating testimony of persons at the places at which he said he applied, nor does it appear that the agency independently sought to obtain such evidence. True, the additional requirement enacted by L. 1948, c. 110, p. 599, to the requirements "able to work" and "available for work" in subsection 4 (c), that the claimant also demonstrate "that he is actively seeking work" imports that, though standing alone, credible evidence from the claimant of reasonable efforts on his part may suffice to prove his attachment to the labor market.

The Board of Review doubtless saw no occasion to require or obtain corroboration of the plaintiff's testimony in this regard in light of the board's conclusion that, although the Board did not hear the witness and made the decision solely from a reading of the printed record, his testimony was to be credited in all particulars. Although corroboration on this score is not essential, nonetheless this type of evidence is not as satisfactory as evidence, for example, of the claimant's conduct when the agency is able to refer him directly to suitable work opportunities, and in the circumstances of the case our conclusion that plaintiff did not testify truthfully as to his reason for quitting persuades us that he is not entitled to a favorable availability determination except as his testimony of his job-hunting efforts is satisfactorily corroborated. All that then remains in the record countervailing the inference (from the evidence of his long idleness after retiring on pension) that he withdrew from the labor market, is his registration for work when he filed the claim for benefits. Registration alone, however, is not sufficient to support a finding of availability. The minimum of additional evidence made necessary by the 1948 amendment is credible evidence of the claimant's own independent job-hunting efforts, at least when there is no showing of any placement work by the public employment service in the claimant's behalf.

The employer insists that plaintiff's assertion before the Appeal Tribunal that he would not return to its employ in any job requires the determination as a matter

of law that he was not available for work. The Board of
Review refused to accord such effect to plaintiff's statement
inasmuch as there was no evidence that the employer had a
job to offer plaintiff. We agree that without such proof
there is no basis for a finding that the claimant refused
"suitable work which he did not have good cause to refuse."
Cf. Ludwigsen v. N. J. Dept. of Labor & Industry, supra,
W. T. Grant Co. v. Board of Review, supra. Although it
would have been futile to offer the plaintiff a job and proof
that a job was offered was therefore unnecessary, yet if
availability is to be made to depend upon whether the
claimant is to be considered as having refused an opportunity
to have "suitable work," what the job is must appear, that
its suitability may be determined, and also whether there
may have been "good cause" for him to refuse it. But we
think it was the board's duty to call to the employer's atten-
tion that failure in its proofs and to see to it that the evi-
dence, if any, available to establish that fact was presented.
Hagadone v. Kirkpatrick, supra. In light of the plaintiff's
attitude, it was the board's duty not to allow him benefits
if he could have had suitable work with the defendant and
had no good cause to refuse it, and the discharge of that
duty required that the board command that such proof be
offered if available. Otherwise the fund may be improperly
invaded to pay an unfounded claim, a result which it is the
agency's duty to prevent.

However genuine the claimant's desire to be attached
to the labor market, the availability test is not met unless
there exists a labor market to which he may be attached, that
is, it must appear that there is a substantial amount of work
in the area for the skills he has to offer. Valenti v. Board
of Review, supra. This does not mean that job vacancies
must exist. "It means only that the type of services which
an individual is offering is generally performed in the geo-
graphical area in which he is offering them." 55 Yale L. J.,
p. 124; Valenti v. Board of Review, supra.

The Appeal Tribunal did not consider the question of the
existence of a labor market, except as affected by the plain-

tiff's age, of which more below. The Board of Review supplied the proof in this regard by taking "judicial" notice that the job of pump operator "is not peculiar to this employer's plant. There is a demand for such skill in many other factories and business establishments." This action was first made known to the parties when the board's decision was received, so that defendant was not afforded a prior opportunity to contest the noticed fact. Defendant insists that it was thereby deprived of procedural due process, relying upon our recent decision in *In re Plainfield-Union Water Company*, 11 *N. J.* 382 (1953).

There must first be noted a distinction between the scope of the facts of which an administrative body may properly take official notice and whether the procedure followed has given the parties affected a fair opportunity to contest the facts noticed. See 60 *Harv. L. Rev.* 620. We have pointed out the nature and extent of the agency's duty to have a sufficient factual record upon which to base its decisions upon claims. We see nothing irregular or improper in the action of the Board of Review in taking official notice of such information as to the existence and extent of particular occupations in a given geographical area as may have been obtained by the agency in the routine of collecting such data through the media of its informational pipelines to the labor market. See *Bliley Elec. Co. v. Unemployment Comp. Bd. of Review*, 158 *Pa. Super.* 548, 45 *A. 2d* 898 (*Super. Ct.* 1946). The manner and purposes of its compilation in furtherance of the administration of the agency's several functions under the law remove any basis for suspicion of its trustworthiness. However, being a fact essential in the process of adjudication of the claimant's right to benefits, chargeable, if allowed, against the employer's account, it is a fact which, though noticed, the defendant must be afforded, before the decision, an unabridged opportunity to meet. See *Davis, Administrative Law*, p. 478, *In re Plainfield-Union Water Company, supra, Carbone v. Atlantic Yachting Co.*, 14 *N. J. Super.* 269 (*App. Div.* 1951). But we see no basis for defendant's complaint here. Upon

receipt of the decision of the Board of Review, defendant applied to the board for a rehearing. At the oral argument in this court it was conceded that the grounds upon which rehearing was sought did not include the board's failure to give defendant the opportunity to meet the facts noticed. If the defendant did not believe at that time that there was reason to complain of the board's action, we are justified in finding that the defect was waived.

The Appeal Tribunal's opinion indicates that the plaintiff's age was a factor which strongly influenced its decision. The opinion states:

"It is well known that, except in times of the gravest national emergency, a man sixty-five years old has very little chance to find a new job in the field of low-grade skills of which this claimant is capable. When he elects to quit his regular job, where he has by far the best chance of employment because of his experience, he makes it almost impossible for himself to find any employment. We do not agree with employers that men of sixty-five are not good workers; but we must recognize the situation as it exists."

The Board of Review rejected as legally unsound this implication that, despite the existence of a market for the services the claimant is willing and able to perform, the labor market contemplated by the availability test does not exist if the claimant is 65 or over and employers will not hire him for that reason. We agree with the board. The claimant's age should properly be a consideration upon the issue of his availability only as it relates to his ability to work or is tied to restrictions which materially limit his capacity for employment. *Cf. Valenti v. Board of Review, supra.* The practice of some employers not to hire applicants above certain ages irrespective of their capacity and willingness to do the work the employer has to offer · is a voluntary standard and is not embraced in any legal prohibition. It is doubtful that the practice is uniformly followed by all employers in any given labor market area, and suitable job opportunities which the older claimant is qualified to perform may nonetheless exist. In any event, the primary determinant of the existence of the labor market contemplated under the test is that already mentioned, namely,

whether there is a market in the geographical area in which the claimant is willing to work for services which he is able to perform. As was said in *Claim of Bourne*, 282 *App. Div.* 1, 122 *N. Y. S. 2d* 25, 27 (*App. Div.* 1953):

"It is a matter of growing importance to the community to continue to utilize the skills and experience of its older people; and as the life span expands the problem becomes progressively more pressing. The Unemployment Insurance Law is intended to protect and continue the working activity of all members of the community.

It is not merely for the protection of young workers but also of workers of advanced years who remain in the labor market. We take unusual care in this decision not to suggest or imply that age alone necessarily results in non-availability in the labor market. Availability is the statutory test; but it must be applied individually to the facts of each case as the administrator sees them.

Age, linked to a lack of physical or mental capacity to work, or age coupled with restrictions which cut down greatly the possibility of employment, may fairly result in a finding of non-availability. But an able aged man is an available man if he has remaining abilities that can be sold on the market. When such a man is willing to meet the market his employment is covered by the statute."

The record does not clearly show that the plaintiff was willing to take work as a pump operator. His claim form states that he wanted "light work." Assuming that this embraces a pump operator's job, his capacity for doing such work is not questioned, and the fact as found by the Board of Review that there was a substantial amount of that kind of work in the area sufficed to support a finding of the existence of the labor market, notwithstanding the plaintiff could not readily sell his skill in the market because of his age.

Our conclusion upon the issue of plaintiff's eligibility is therefore contrary to that of the Board of Review and the Appellate Division only because in the special circumstances of this case we think that there should be corroboration of plaintiff's testimony as to his independent job-hunting efforts. There would be no purpose, however, in a remand of the case to the Board of Review to provide the opportunity to obtain such evidence. Even if it be assumed that plaintiff's availability, and hence his eligibility, was

established, we think that in any event he is disqualified for benefits. We are satisfied that, having the alternative to continue in his employ with the defendant if the union and the employer consented, or to retire and take the pension, his choice of the latter makes his voluntary leaving a leaving "without good cause."

What is "good cause" must reflect the underlying purpose of the act to relieve against the distress of involuntary unemployment. The seeming paradox of allowing benefits to an individual whose unemployment is of his own volition disappears when the context of the words is viewed in that light. The Legislature contemplated that when an individual voluntarily leaves a job under the pressure of circumstances which may reasonably be viewed as having compelled him to do so, the termination of his employment is involuntary for the purposes of the act. In statutory contemplation he cannot then reasonably be judged as free to stay at the job. Unlike the statutes of some states, the New Jersey act does not require that "good cause" be "connected with the work" or "attributable to the work." Therefore, "good cause" may also lie in extraneous factors exerting compulsive pressure upon the claimant and causing him to quit. The test is well stated in *Bliley Elec. Co. v. Unemployment Comp. Bd. of Review, supra,* 45 *A.* 2*d* 903:

"* * * The mere fact that a worker wills and intends to leave a job does not necessarily and always mean that the leaving is voluntary. Extraneous factors, the surrounding circumstances, must be taken into the account, and when they are examined it may be found that the seemingly voluntary, the apparently intentional, act was in fact involuntary. A worker's physical and mental condition, his personal and family problems, the authoritative demand of legal duties—these are circumstances that exert pressure upon him and imperiously call for decision and action. When therefore the pressure of real not imaginery, substantial not trifling, reasonable not whimsical, circumstances *compel* the decision to leave employment, the decision is voluntary in the sense that the worker has willed it, but involuntary because outward pressures have compelled it. Or to state it differently, if a worker leaves his employment when he is compelled to do so by necessitous circumstances or because of legal or family obligations, his leaving is voluntary with good cause, and under the act he is

entitled to benefits. The pressure of necessity, of legal duty, or family obligations, or other overpowering circumstances and his capitulation to them transform what is ostensibly voluntary unemployment into involuntary unemployment."

In the instant case the plaintiff was under no compulsion whatever to leave his employment, at least until he attempted and failed to get the consents of the employer and his union to continue in it. He chose not to seek those consents but elected the alternative given him by the contract to retire and take the pension. He therefore left work voluntarily without good cause and is disqualified for benefits.

Reversed.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, BURLING, JACOBS and BRENNAN—6.

*For affirmance*—None.