WM. FLEMER'S SONS, INC., A NEW JERSEY CORPORATION, T/A PRINCETON NURSERIES, APPELLANT, v. BOARD OF REVIEW, DIVISION OF EMPLOYMENT SECURITY, DEPARTMENT OF LABOR AND INDUSTRY, AND PEDRO SANTOS DIAZ, RESPONDENTS.

WM. FLEMER'S SONS, INC., A NEW JERSEY CORPORATION, T/A PRINCETON NURSERIES, APPELLANT, v. BOARD OF REVIEW, DIVISION OF EMPLOYMENT SECURITY, DEPARTMENT OF LABOR AND INDUSTRY, AND NATANAEL CRUZ DIAZ, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted November 10, 1980—Decided November 25, 1980.

Before Judges SEIDMAN, ANTELL and LANE.

*McTighe & McTighe,* for appellant (*Arthur A. McTighe,* on the brief).

*John J. Degnan,* Attorney General of New Jersey, for respondent Board of Review (*Michael S. Bokar,* Deputy Attorney General, of counsel; *Jerome A. Ballarotto,* Deputy Attorney General, on the brief in A–4516–78; *Herbert J. Sablove,* Deputy Attorney General, on the brief in A–812–79).

Respondents Pedro Santos Diaz and Natanael Cruz Diaz did not file briefs.

The opinion of the court was delivered by

SEIDMAN, P. J. A. D.

These appeals, involving like issues of law and fact, have been consolidated on the court's own motion. In each the employer appeals a determination by the Board of Review that the claimant, a Puerto Rican agricultural laborer, was eligible for unemployment benefits.

Underlying the claims is an agreement entitled "Agricultural Agreement between Employers and Puerto Rican Agricultural Workers–1978," entered into between the Commonwealth of Puerto Rico and Garden State Service Cooperative Ass'n., Inc., an association of New Jersey farmers, growers and agricultural organizations. The purpose of the agreement was to make available to qualified New Jersey farmers or growers agricultur-

al workers from Puerto Rico on the terms and for the wages specified in the agreement. It appears that each worker engaged by a farmer or grower would be required to sign a copy of the contract, signifying his acceptance of its terms. Particularly relevant to these appeals is the provision therein that "[T]his Agreement shall be in effect from the date of its execution until *not more than 28 weeks of employment or until December 1, 1978, whichever comes first* unless extended or terminated under the terms provided for herein." (Emphasis in original).

Pedro Santos Diaz and Natanael Cruz Diaz (apparently not related) were engaged by appellant on April 6, 1978. That claimants' employment was under and subject to the aforementioned contract is not in dispute. The controversy is over the effect of the termination of claimants' employment in October 1978 and their return to Puerto Rico upon their eligibility for unemployment compensation. Both claimants filed claims in Puerto Rico on October 29, 1978. Each claim was rejected by the local deputy on the ground that the claimant had left work voluntarily without good cause attributable to the work and, therefore, was disqualified for benefits under *N.J.S.A.* 43:21–5(a).

Pedro appealed to the Appeal Tribunal which, after a hearing, affirmed the deputy's determination. On further appeal, the Board of Review reversed, holding that the claimant was not disqualified. In Natanael's case, his appeal to the Appeal Tribunal produced a reversal of the action taken by the deputy. But, on the employer's appeal, the Board of Review remanded the matter for a rehearing. Upon such rehearing the Appeal Tribunal changed its previous ruling and decided to affirm the deputy. However, as in the case of Pedro, the Board of Review reversed. The employer thereupon filed the appeals which are before us.

The facts in each case are not in substantial dispute, except with respect to the interpretation of the employment agreement. Both claimants maintained that they returned to Puerto

Rico when their contracts ended upon the expiration of 28 weeks of employment. They agreed that the employer had offered them further employment, but neither accepted the offer, desiring to return home for personal, family reasons. The employer contended before the Appeal Tribunal that the period of employment did not expire until December 1, 1978, and that work was available for both at least until December 15, but both refused to stay on.

In affirming the deputy the Appeal Tribunal took the position in each case that the contract of hire was until December 1, 1978, and that the claimant's personal reason for leaving was voluntary and did not constitute good cause attributable to the work. However, the Board of Review disagreed. Construing the agreement as providing for a 28–week employment period, the board held that since the employee completed the period, his separation from work could not be considered voluntary and no disqualification existed. It also held in both cases, though noting in the case of Natanael that "the Appeal Tribunal took no testimony regarding the claimant's availability or search for work," that "the claimant was not obliged to accept the employer's offer of work for an additional period, and no disqualification applies under R.S. 43:21–5(c)." As for Pedro, the board also held, though without supporting factual findings, that his search for work "was sufficient to meet the eligibility requirements from October 29, 1978, to the date of hearing on February 1, 1979."

The employer argues on these appeals that the Board of Review unreasonably concluded from the proofs that the claimants were not disqualified for benefits under *N.J.S.A.* 43:21–5(a) and *N.J.S.A.* 43:21–5(c), and that "the extension of benefits to this claimant without disqualification is contrary to the purpose and public policy of the unemployment compensation law." It is, therefore, necessary to examine closely each of the cited provisions.

Paragraph (a) deals with quitting the employment and provides, to the extent pertinent here, that a person is disqualified for benefits during the specified periods if he "has left work voluntarily without good cause attributable to such work." Paragraph (c) is concerned with availability for suitable employment and provides for disqualification

> ... [i]f it is found that he has failed, without good cause, either to apply for available, suitable work when so directed by the employment office or the director or to accept suitable work when offered him . . . .

What constitutes suitable work is amplified in subparagraphs (1) and (2).

■■■ It is entirely clear that the employment contract here involved expired by its own terms 28 weeks after the commencement of employment. We reject the employer's concept that the contract ran until December 1, 1978. Such interpretation is a distortion of unambiguous language. The 28-week period was the *maximum* under the contract. It was subject to shortening if December 1 came first. An employee does not leave the job without good cause where the employment is for a fixed term which has expired. *Cf. Lewis v. California Unemployment Ins. App. Bd.*, 56 *Cal.App.*3d 729, 128 *Cal.Rptr.* 795 (D.Ct.App.1976); *In re Interrogatories by Industrial Comm'n.*, 30 *Colo.App.* 599, 496 *P.*2d 1064 (Ct.App.1972); *Hunger v. Buffalo Slag Co., Inc.*, 40 *App.Div.*.2d 728, 336 *N.Y.S.*2d 525 (1972); *Matthieu v. Dudley*, 10 *Ohio App.*2d 169, 226 *N.E.*2d 763 (Ct.App.1967). Consequently, claimants were not disqualified for unemployment benefits under *N.J.S.A.* 43:21–5(a). The employment relationship terminated by the express language of the agreement. True, the employer was willing to continue the employment until December 15, but this could only constitute an offer of *new employment*, which may implicate paragraph (c) of *N.J.S.A.* 43:21–5 but has no bearing on paragraph (a).

■■■ While we agree with the conclusion reached by the Board of Review that claimant's separation from work was not a

disqualification under *N.J.S.A.* 43:21–5(a), this does not end the matter since the question remaining to be answered is whether claimants failed without good cause to apply for available, suitable work or to accept an offer of suitable work. *N.J.S.A.* 43:21–5(c). It appears that the employer did make an offer of further work which was declined. We disagree with the broad statement by the Board that claimants were not obliged to accept the offer of work for an additional period, and that no disqualification resulted under paragraph (c). In our view, the failure to accept the offer was a factor to be considered along with all other factors in determining whether paragraph (c) applied. We do not take the position that claimants' failure to accept the offer, without more, made them ineligible for benefits. The key phrase is "without good cause." Whether each claimant had a valid reason for wishing to return to their homeland and family required an inquiry into the facts and circumstances followed by appropriate findings of fact and conclusions. It should be noted that claimants may have searched for work upon their return to Puerto Rico. In both cases, the decision of the Board of Review is deficient on the issue of availability for work. The Board acknowledges that the Appeal Tribunal took no testimony with respect to Natanael's "availability or search for work." As for Pedro, as indicated earlier, all that appears is the board's conclusion, without support in the record, that his search for work was sufficient to meet the eligibility requirement.

We therefore reverse the decisions of the Board of Review and remand for further hearings limited to the issue of claimants' availability for suitable work within the purview of *N.J. S.A.* 43:21–5(c). Whether the hearings should be held before the Appeal Tribunal, rather than the Board of Review, we leave to the latter's judgment. In either case, there should be appropriate findings of fact and conclusions, and new or amended decisions. Jurisdiction is not retained.