JOHN FOX, CLAIMANT, v. WOODBRIDGE TOWNSHIP BOARD
OF EDUCATION, APPELLANT, v. BOARD OF
REVIEW, RESPONDENT.

March 19, 1985.

ORDER

This matter having been duly considered and the Court
having determined that certification was improvidently granted;
96 *N.J.* 314,

It is ORDERED that the within appeal be and hereby is
dismissed.

O'HERN, J., concurring in the result.

*For dismissal*—Chief Justice WILENTZ, and Justices CLIF-
FORD, HANDLER and O'HERN—4.

*For reversal*—Justices SCHREIBER, POLLOCK and GARI-
BALDI—3.

O'HERN, J., concurring.

I concur in the Court's order vacating our grant of certifica-
tion. 96 *N.J.* 314. I add a few observations in light of the
dissent to that order.

We granted certification to review what petitioner described
as a "significant issue of statewide proportion because of its
pervasive effect on every school district within the State." The
petitioner invitingly framed the issue, as do our dissenting
members, in terms of whether a teacher who quits a teaching
job to go to college full-time is eligible for unemployment
benefits. The argument runs that such a leaving is a voluntary
quit without cause attributable to work, a disqualification under
*N.J.S.A.* 43:21–5(a). I agree that this is an interesting question
provoking consideration of whether society is better served by
encouraging individuals to better themselves through self-edu-

cation or by forcing them to remain locked in the hours of employment first chosen.

The problem is that the facts of this case do not present that question. Fox never had a definite job, either as a teacher or substitute teacher, from which to quit. In the fall of 1981, Fox was a full-time student, working his way through college by working nights at Alexander's Department Store, making about $5,000 a year. To supplement his income, he offered to work as a "call in" substitute teacher with the Woodbridge Township Board of Education (Woodbridge Board). During the entire fall semester, the Woodbridge Board called him in only twice. He had told the Board from the start that he could work only on Fridays during his first semester and during vacations.

When Alexander's had to lay Fox off in the recession of January 1982, Fox looked everywhere for work. He sounds like the sort of person we are always told to emulate. His record showed that he had personally run down over twenty leads for jobs on nights and weekends as a liquor store clerk, cashier, gas station attendant, waiter, bartender, and restaurant counterman. He found no work. While Fox's application was pending, the Woodbridge Board, on the advice of its counsel, called Fox's home to offer substitute work on three other days when they knew that he was unavailable. Fox's mother explained to them that he was attending college.

The Appeal Tribunal concluded that because Fox did not have a "definite job" with appellant from which to resign, he was not disqualified for benefits under *N.J.S.A.* 43:21–5(a). The dissent cites *Patrick v. Board of Review*, 171 *N.J.Super.* 424 (1979), in an attempt to support the premise that part-time substitute teaching is a definite job. However, the Appellate Division opinion in that case affirmed a Board of Review determination that a combination long-term and day-to-day substitute, who had "reasonable assurance of employment" during the following school year, could not collect unemployment compensation during the school's summer recess. *Id.* at 426. *See also Sulat*

*v. Board of Review,* 176 *N.J.Super.* 584 (1980) (full-time teacher not ineligible for unemployment benefits when she was terminated and placed on a substitute list).

That is all that there is to this case. By stating the question incorrectly, the dissent has cast doubt upon the integrity of the decision below. But, in reality, it remains an essentially factual dispute hardly requiring Supreme Court review. In *Self v. Board of Review,* 91 *N.J.* 453 (1982), the Court yielded broad administrative discretion to the Appeal Tribunal in its interpretation of a voluntary quit. Similar principles of analysis lead us to give deference to the agency in this interpretation of the provision.

It is commendable to seek to bring about change in the way our unemployment laws affect experience ratings of multiple employers, each of whom contributed in part to a wage base. This is a good cause for legislative representatives. It is not the function of judges. When we review an agency determination, our function is not to change the law under which the agency operates, but to examine the record to see whether there is anything irrational about the way the agency has applied its discretion. *See Self, supra,* 91 *N.J.* at 459; *Dougherty v. Human Services Dep't,* 91 *N.J.* 1, 6 (1982).

I cannot conclude that it was irrational for the agency to have determined that a hard-working night and weekend worker, who has lost a job, should not be disqualified from benefits because he tried to supplement his modest income by working on his days off when and if a school board called.[1]

I agree with the majority of the Court that this type of essentially factual controversy was satisfactorily resolved by the Appeal Tribunal. We are satisfied that grounds for certifi-

---

[1] Besides, the dissent's concern for the school board's fisc is equally misstated. We are informed that under controlling law, had the board undertaken to follow the procedures of *N.J.S.A.* 43:21–7(c)(1), *L.*1984, *c.* 24, its maximum exposure would apparently have been $105.

cation do not exist under Rule 2:12–4 for the reasons that (1) the final judgment of the Appellate Division is essentially an application of settled principles to the facts of this case and does not therefore present a question of general public importance; (2) the decision on review does not present a conflict among judicial decisions that requires clarification or calls for this Court's supervision; and (3) no other certifiable questions are presented under the appropriate Rules Governing the Courts. *In re Route 280 Contract,* 89 *N.J.* 1, 1–2 (1982).

GARIBALDI, J., dissenting.

The majority of the Court would vacate certification in this case. I would not. The key issue here is whether a full-time college student who leaves a job because of his college schedule does so voluntarily and "without good cause attributable to such work." Although the Appellate Division recognized that "a voluntary leaving of employment in order to go to college comes within this disqualifying category," it reluctantly affirmed the Board of Review, New Jersey Department of Labor and Industry, stating, "[w]e are unable to say that the clear meaning of the statute is sufficiently inconsistent with the administrative interpretation that we should intrude." I, too, accord great weight to the Agency's decision. However, if it is contrary to the statute, it must be overruled. Here, the clear purpose of the Unemployment Compensation Act, as supported by the 1961 amendment to *N.J.S.A.* 43:21–5(a), establishes that the Legislature did not intend that students who voluntarily leave their jobs because of their college schedule receive unemployment benefits.

I

John Fox was a college student. He was employed by Alexander's Department Store as a security guard and salesman from August 1980 until January 4, 1982, when he was laid off. He worked at Alexander's in the evenings and on Sundays. While still employed by Alexander's, he was interviewed

in August 1981 for a position with the Woodbridge Board of Education as a "call-in substitute" teacher. At that time he informed the interviewer that because of his schedule, he would be available to substitute teach only on Fridays and during college recesses. Thereafter, he was called to and did substitute teach on two days in November 1981 and five days in January 1982 during college recess. Although still on vacation, he refused offers to substitute on three days in January. Sometime at the end of January, he advised the Board of Education that commencing the first week of February 1982, he had college classes five days a week and as a result of this schedule would be unavailable to substitute teach from February 3, 1982 through May 28, 1982, the date of his graduation from college. In April 1982, the Board called Fox's home on three occasions to offer substitute work but was told by Fox's mother that he was unavailable because he was attending college. After Fox's graduation in May 1982, he never contacted the Board to determine if any substitute work was available. There is no doubt that Fox voluntarily resigned his position as a substitute teacher because of his college schedule and made no attempt to conform his schedule to allow for substitute teaching.

On January 25, 1982, Fox filed a claim for unemployment compensation benefits. As noted by the Appellate Division, "a tortuous and convoluted trip through the administrative agency" ensued. This journey was comprised of the following: (1) an initial determination by the local claims office that Fox was eligible for unemployment compensation benefits; (2) that local office's redetermination that Fox was ineligible; (3) the Appeal Tribunal determination that Fox was eligible; (4) the Board of Review's decision setting aside the Appeal Tribunal's decision and remanding the matter to the Tribunal for a rehearing and new decision on all issues; (5) a decision after a rehearing by the Appeal Tribunal that Fox was eligible; and (6) a modification of the Appeal Tribunal's final decision by the Board of Review.

The result of the Board of Review's final decision was a holding that Fox was disqualified for benefits from January 20, 1982 through February 13, 1982, was eligible for benefits from February 14, 1982 through May 29, 1982, and was ineligible for benefits thereafter through June 17, 1982. The amount awarded to Fox in unemployment benefits was allocated between Alexander's and the Board of Education. In effect, this decision required the Board of Education to pay more in unemployment benefits to Fox than it had paid to him in salary for his seven days of substitute teaching. The Board of Education appealed the decision, which the Appellate Division had affirmed. We granted certification, 96 *N.J.* 314.

## II

I do not dispute Fox's right to unemployment benefits from Alexander's. My dissent concerns solely the holding that Fox's leaving of his substitute teaching job because of his class schedule was not a voluntary leaving "without good cause attributable to such work."

The Appellate Division's instincts were correct. However, its ultimate reliance on the administrative agency's reasoning was improper. First, the history of the case through the administrative labyrinth illustrates the inconclusiveness of the administrative determination. Under the peculiar circumstances of this case, I am reluctant to be bound by the Agency's decision.

Moreover, the decisions of both the Appeal Tribunal and the Board of Review on the proper interpretation whether Fox voluntarily left his job without good cause attributable to his work are cursory and unsupported by citation of legal precedent. Their allegations that Fox never had a definite job as a substitute teacher from which to resign also are unsupported by any legal authority. The Appeal Tribunal in its decision stated: "Fox's failure to be available for such work as of February 1, 1982 cannot be considered a voluntary leaving because there was no definite job from which to resign. Rath-

er, the issue remains one of availability or work refusal, but not that of a voluntary leaving." (Appeal Tribunal decision, 6/23/82). Similarly, the Board of Review held that: "The employer's primary argument in their appeal to us is that the claimant voluntarily left his job and should be disqualified accordingly, but as the claimant worked on a day-to-day basis we agree with the Appeal Tribunal in rejecting this argument." (Board of Review decision, 8/25/82). Further, the Agency's position that substitute teaching is not a definite job is contrary to the Appellate Division's recent decision in *Patrick v. Board of Review*, 171 *N.J.Super.* 424 (1979). In that case the court held that a claimant who was employed during the 1977–78 school year as a day-to-day substitute teacher and who was approved as a day-to-day substitute for the 1978–79 school year was to be treated like a full-time teacher, and to that extent was not entitled to unemployment compensation benefits during the summer months intervening between school years, in light of her "reasonable assurance of employment" for the following year. *Id.* at 426.

### III

The specific statutory provision in issue is *N.J.S.A.* 43:21–5(a), which states that:

An individual shall be disqualified for benefits:

(a) For the week in which the individual has left work *voluntarily without good cause attributable to such work* * * *. [Emphasis added].

In construing statutes, this Court has emphasized that "[t]he construction of specific terms must be consistent with the general purpose the law was designed to achieve." *Valenti v. Board of Review of the Unemployment Compensation Comm'n of N.J.*, 4 *N.J.* 287, 292 (1950).

The purpose of the Unemployment Compensation Act is clear. As we stated in *Krauss v. A. & M. Karagheusian:*

The Unemployment Compensation Act provides social insurance, for the common good as well as in the interest of the unemployed individuals, against the distress of involuntary unemployment for those individuals who have ordinarily

been workers and would be workers now but for their inability to find suitable jobs. *Ludwigsen v. N.J. Department of Labor and Industry*, 12 *N.J.* 64 (1953); *W.T. Grant Co. v. Board of Review*, 129 *N.J.L.* 402 (Sup.Ct.1943); *Valenti v. Board of Review*, 4 *N.J.* 287 (1950); *cf. Workmen's Compensation Act, R.S.* 34:15-1 *et seq., Nagy v. Ford Motor Co.*, 6 *N.J.* 341 (1951). The provisions for eligibility and disqualification are purposed to preserve the fund for the payment of benefits to those individuals and to protect it against the claims of others who would prefer benefits to suitable jobs. The basic policy of the law is advanced as well when benefits are denied in improper cases as when they are allowed in proper cases. [13 *N.J.* 447, 455-56 (1953)].

The administrative agency's decision does not support the purpose of the Act, but rather directly contravenes it. The Unemployment Compensation Act was enacted to relieve the economic hardships of sudden unemployment by providing temporary assistance to meet, in part, the continuing burdens that must be borne regardless of unemployment. The Legislature never intended to subsidize the expenses of education by making available the fund created under the Act. Such a subsidy would be contrary to the basic purpose and intendment of the Act.

Further support for this position is evident from the Legislature's amendment in 1961 to *N.J.S.A.* 43:21-5(a), *L.*1961, *c.* 43. Prior to 1961, *N.J.S.A.* 43:21-5(a) did not disqualify individuals who left work for good personal reasons from receiving unemployment compensation benefits. As was stated in *Krauss, supra*, 13 *N.J.* at 464: "The Legislature contemplated that when an individual voluntarily leaves a job under the pressure of circumstances which may reasonably be viewed as having compelled him to do so the termination of his employment is involuntary for purposes of the act." In direct response to this decision, the Legislature in 1961 amended the statute by adding the requirement that the "good cause" for leaving work be "attributable to such work." The effect of this amendment was to "eliminate the eligibility of persons who leave work for good, but personal causes." *Self v. Board of Review*, 91 *N.J.* 453, 457 (1982).

There are no New Jersey cases in which the issue arises of whether a full-time student who leaves a job to return to school

is ineligible for unemployment benefits. However, the majority of other states that have discussed this issue have held that students who leave their jobs for school are ineligible for unemployment benefits. As stated in an annotation in 35 *A.L.R.*3d 1129, 1154 (1971), "Claimants attending school have been markedly unsuccessful in their attempts to secure unemployment benefits." Although the statutes differ from state to state, most of the decisions find support in the general purpose of the Unemployment Compensation Act—namely, to provide support for the unfortunate employee whose employment is terminated, and not to use unemployment compensation funds to subsidize college students who have scheduled their classes so they cannot work. *See Townsend v. Kansas Employment Sec. Bd. of Review,* 218 *Kan.* 306, 543 *P.*2d 888 (1975); *Golden v. Industrial Comm'n Division of Employment Security,* 524 *S.W.*2d 34 (Mo.App.1975); *Schifferle v. Catherwood,* 33 *A.D.*2d 847, 305 *N.Y.S.*2d 911 (N.Y.A.D.1969); *Gulbin v. Unemployment Compensation Bd. of Review,* 191 *Pa.Super.* 646, 159 *A.*2d 37 (1960); *Majoris v. Unemployment Compensation Bd. of Review,* 192 *Pa.Super.* 269, 162 *A.*2d 86 (1960); *Rubin v. Unemployment Compensation Bd. of Review,* 193 *Pa.Super.* 604, 165 *A.*2d 101 (1960); *Bates v. Unemployment Compensation Bd. of Review,* 191 *Pa.Super.* 266, 156 *A.*2d 589 (1959); *Lovich v. Unemployment Compensation Bd. of Review,* 189 *Pa.Super.* 529, 151 *A.*2d 647 (1959); *Pelecovich v. Unemployment Compensation Bd. of Review,* 172 *Pa.Super.* 646, 94 *A.*2d 154 (1953); *Graham v. Commonwealth of Pennsylvania, Unemployment Compensation Bd. of Review,* 14 *Pa.Cmwlth.* 445, 322 *A.*2d 807 (1974); *Chaharyn v. Department of Employment Securities,* 85 *R.I.* 75, 125 *A.*2d 241 (1956); *Texas Employment Comm'n v. Hays,* 360 *S.W.*2d 525 (Tex.1962); *Schultz v. Board of Review of Indus. Comm'n,* 606 *P.*2d 254 (Utah 1980); *Neff v. Industrial Comm'n,* 24 *Wis.*2d 207, 128 *N.W.*2d 465 (1964).

While there are no relevant New Jersey cases interpreting the 1961 amendment, there are several cases that in defining

"good cause attributable to such work" have excluded "personal reasons" such as transportation difficulties from the ambit of the amendment. *See, e.g., Self v. Board of Review, supra,* 91 *N.J.* 453; *White v. Board of Review,* 146 *N.J.Super.* 268 (App.Div.1977); *Morgan v. Board of Review,* 77 *N.J.Super.* 209 (App.Div.1962); *see also DeLorenzo v. Board of Review,* 54 *N.J.* 361, 363 (1969) (in which we recognized as the only exception to the above rule that instance when an employee is unable to work because of illness but yet, attempts to protect her employment); *Stauhs v. Board of Review,* 93 *N.J.Super.* 451, 457 (App.Div.1967) (working conditions detrimental to existing physical condition whose origin was not work-related did not constitute good cause attributable to such work); *Zielenski v. Board of Review,* 85 *N.J.Super.* 46, 54 (App.Div.1964) (mere dissatisfaction with working conditions does not constitute good cause). In these cases, the courts have held that the burden is on the claimant to establish his right to unemployment compensation.

As noted above, the purpose of the Unemployment Compensation Act is to aid workers who involuntarily become unemployed. It certainly is not to subsidize the education expenses of college students. In reaching that conclusion, I am not at all critical of the claimant. His efforts to work his way through college are commendable. My disagreement is with an interpretation of the Unemployment Compensation Act that permits a claimant, who is both a student and an employee, to recover unemployment benefits when his obligations as a student prevent him from discharging his duties as an employee.

In view of the clear wording of the statute and of the 1961 amendment, and the New Jersey cases interpreting the statute after 1961, I find that Fox has failed to prove that he is entitled to unemployment compensation as a result of his job as a substitute teacher in Woodbridge.

Justice SCHREIBER and Justice POLLOCK join in this dissent.