689 A.2d 124

CATHERINE TRICARICO, CLAIMANT–APPELLANT, v. BOARD
OF REVIEW, RESPONDENT–RESPONDENT.

January 23, 1997.

## ORDER

This matter having been duly considered and the Court having determined that certification was improvidently granted;

It is ORDERED that the within appeal be and hereby is dismissed.

STEIN, J., dissenting.

Only on the rarest occasions in recent years have any members of this Court dissented from orders vacating certification as improvidently granted. *See Fox v. Woodbridge Township Bd. of Educ.*, 98 *N.J.* 513, 516, 488 *A.*2d 1020 (1985) (Garibaldi, J., dissenting); *Mahony v. Danis*, 95 *N.J.* 50, 54, 469 *A.*2d 31 (1983) (Schreiber, J., dissenting). I am moved to write separately in this appeal primarily because the *pro se* litigant whose petition we granted is entitled to a reasoned disposition of the issues she presented. Moreover, I am of the view that the basic issue posed by this appeal presents an unsettled "question of general public importance," and that the interest of justice warrants our review of the matter. *See R.* 2:12–4.

Preliminarily, I note that petitioner Catherine Tricarico has appeared *pro se* at every stage of this case, including proceedings before the Department of Labor Appeal Tribunal, the Board of Review, the Appellate Division, and this Court. Petitioner's brief in support of her petition for certification was clear and concise, and sufficiently persuasive to warrant this Court's grant of certification. 143 *N.J.* 517 (1996).

*Pro se* arguments by non-lawyers are a rare occurrence in this Court. Although untrained in the law, petitioner argued her appeal before our Court articulately, forcefully, and with unusual poise. From petitioner's perspective, the Court's order stating that certification was improvidently granted lacks any substantive content that clarifies or informs the Court's dismissal of her appeal. For this member, the exceptional quality of petitioner's uncounseled presentation before this Court, combined with the unsettled legal issue raised by her appeal, are reason enough to warrant a disposition on the merits rather than a dismissal without explanation.

I

Petitioner's appeal presents two issues: first, whether the agency decision that petitioner was *not discharged* by her employer, St. Joseph's Hospital and Medical Center, (St. Joseph's) on January 14, 1994, when the hospital administrator ordered her to turn in her badge and keys, clean out her desk and leave the hospital was supported by substantial credible evidence in the record; second, if that agency decision was unsupported by the record, was petitioner obligated to return to work when she was invited to do so by the hospital administrator on January 17 and 18, 1994.

The facts may briefly be summarized based on the testimony elicited at the March 30, 1994 hearing before the Department of Labor Appeals Examiner.

Petitioner worked as a secretary at St. Joseph's from October 1989 until January 14, 1994. Although assigned to work with the Chairman of the Department of Orthopedic Surgery, she also assisted other physicians including Dr. Vincent McInerney, who was responsible for preparing the monthly on-call schedule for the emergency room. Petitioner was required to type and distribute the schedule.

On January 14, 1994, plastic surgeon Dr. Michael Baruch complained to petitioner about the tentative February 1994 on-call schedule, stating that he desired to be scheduled more frequently.

Petitioner suggested that he call Dr. McInerney. During their ensuing phone conversation, Dr. McInerney asked to speak with petitioner and allegedly spoke abusively to her, criticizing her for not sending out the February schedule. Petitioner terminated the conversation. Dr. McInerney then called Anthony Pecci, the hospital's Administrative Director of Clinical Services, and complained about petitioner.

Pecci's secretary then informed petitioner that Pecci wanted to see her in his office, but petitioner stated that she had to leave the hospital to take her husband to see his cardiologist. As she was about to leave, Pecci appeared at her office door. According to petitioner's testimony, Pecci criticized her for speaking disrespectfully to Dr. McInerney and petitioner responded by stating: "He can't speak to me the way he did." Pecci replied: "Give me your badge. Clean out your desk. Give me any keys you have and get out of here."

Petitioner testified that she concluded that she had been discharged. She proceeded to clean out her desk and pack her personal belongings. On her way out of the hospital, one of the nurses was concerned about petitioner's flushed appearance and insisted on checking her blood pressure.

Pecci's testimony confirmed his encounter with petitioner and his demand for her badge and keys. He stated that in ordering petitioner to leave he said, "Don't come back here until I contact you." He testified that he had not discharged petitioner, but simply wanted her out of the hospital while he conducted an investigation.

The other evidence adduced at the hearing pertinent to the discharge issue was a letter from Dr. Michael Baruch, the plastic surgeon whose inquiry about the February on-call schedule had precipitated the disagreement between petitioner and Dr. McInerney. Baruch's letter stated that during the evening of January 14, 1994, Dr. Massoud, an orthopedic resident, informed Baruch that he overheard Pecci fire petitioner, and that two other orthopedists had also overheard Pecci's statements to petitioner. According to

Baruch, he telephoned Pecci that evening to request that petitioner be reinstated. Pecci refused, stating that Dr. McInerney and Dr. Ghodabi, petitioner's immediate supervisor, did not want petitioner to work at St. Joseph's any longer.

I note that neither Dr. Baruch nor Dr. Massoud were called as witnesses by petitioner. The statements in Dr. Baruch's letter imply that both physicians, if called to testify, would directly have contradicted Pecci's testimony that he did not discharge petitioner during their conversation on January 14th. Because their testimony would likely have resolved the dispute about the discharge issue, I assume that the Appeals Examiner did not inform petitioner that the applicable regulation permits witnesses for good cause to testify by telephone at Appeal Tribunal hearings. *See N.J.A.C.* 1:12–14.5. We previously have noted in analogous circumstances that the agency has a duty to see to it that available evidence is presented. *See Krauss v. A. & M. Karagheusian, Inc.,* 13 *N.J.* 447, 460, 100 *A.*2d 277 (1953) ("But we think it was the board's duty to call to the employer's attention that failure in its proofs and to see to it that the evidence … available to establish that fact was presented.").

On Monday, January 19th, petitioner went to the hospital's personnel office. Peter Hill, a personnel office employee, informed petitioner that an administrator had the power to fire an employee "on the spot." Petitioner testified that Hill appeared to assume that she had been discharged.

Later that day petitioner received a message on her answering machine from Pecci requesting that she return to work. Pecci telephoned again the following day. According to petitioner, Pecci said that he had overreacted on Friday and would like her to come back to work. Petitioner replied: "Mr. Pecci, I am so upset, so humiliated, so embarrassed, that I don't think I could work in an atmosphere like that."

That same week petitioner filed a claim for unemployment benefits. A Deputy Director of the Division of Unemployment

and Disability Insurance concluded that petitioner had been discharged and qualified for benefits.

The Appeal Tribunal reversed. It reasoned:

Although the claimant may have assumed she was discharged, she was, in fact, merely sent home from work remaining attached to the employer pending an investigation of the incident in question.... It must be concluded therefore that the claimant was never discharged nor did the employer have any intent to terminate her on 01/14/94 when she was told to go home. Accordingly, the Appeal Tribunal concluded that petitioner left work voluntarily without good cause, see *N.J.S.A.* 43:21–5(a), and was therefore disqualified from receiving unemployment benefits.

The Board of Review affirmed on the basis of the Appeal Tribunal's decision. The Appellate Division affirmed in an unreported opinion.

## II

The Court's disposition undoubtedly reflects the view that, irrespective of the events on the preceding Friday, petitioner should have accepted the hospital's invitation to return to work. Perhaps so, but that visceral reaction begs the question whether she had been discharged and, if so, whether she was disqualified for benefits because she refused to accept a prompt invitation of reemployment.

On the discharge issue, the Court could not seriously conclude on the record before us that petitioner had not been fired by Administrator Pecci on January 14, 1994. Of course, our standard of review is highly deferential, and we are obliged to accept agency fact findings if supported by sufficient competent credible evidence. *Clowes v. Terminix Int'l, Inc.*, 109 *N.J.* 575, 587, 538 *A.*2d 794 (1988). However, that deferential standard "requires far more than a perfunctory review; it calls for careful and principled consideration of the agency record and findings." *Mayflower Sec. v. Bureau of Sec.*, 64 *N.J.* 85, 93, 312 *A.*2d 497 (1973).

The Appeal Tribunal's finding of no discharge inspires little, if any, confidence, reflecting as it did an uncritical acceptance of Pecci's testimony and a complete disregard of the conflicting

testimony. Not only did Pecci's demand that petitioner turn in her badge and keys, clean out her desk and leave reflect an intent to discharge. In addition, petitioner packed her personal belongings and left the hospital assuming she had been fired. Her uncontradicted testimony reflected the personnel administrator's belief that she had been fired. Had the Appeals Examiner informed petitioner that Drs. Massoud and Baruch could testify by telephone, the likelihood is that Massoud would have testified that he overheard Pecci fire petitioner and Baruch would have testified that when he subsequently intervened on petitioner's behalf, Pecci refused to reinstate her, a clear indication that he earlier had discharged her. In any event, Dr. Baruch's letter confirming his conversation with Pecci and Dr. Massoud's first-hand version of what actually had occurred was uncontradicted. To quote Justice Clifford, anyone who reads this record carefully and concludes that Pecci did not fire petitioner on the afternoon of January 14, 1994 "should straightaway repair to Brooklyn, there to take immediate advantage of a golden opportunity to strike a bargain on a swell old bridge." *Graves v. Church & Dwight Co., Inc.*, 115 *N.J.* 256, 275, 558 *A.*2d 463 (1989) (Clifford, J., dissenting).

Assuming petitioner was discharged on January 14, 1994, the remaining issue in the case—whether she was disqualified from benefits because she refused to accept a prompt offer of reinstatement—is an unsettled legal question that I understood to be the basis for the Court's grant of certification. The applicable statutory provision is *N.J.S.A.* 43:21–5, which provides in part:

An individual shall be disqualified for benefits:

. . . .

(c) If it is found that the individual has failed, without good cause, either to apply for available, suitable work when so directed by the employment office or the director or to accept suitable work when it is offered, . . .

. . . .

(1) In determining whether or not any work is suitable for an individual, consideration shall be given to the degree of risk involved to health, safety, and morals, the claimant's physical and mental fitness and prior training, experience and prior earnings, the individual's length of unemployment and prospects for

securing local work in the individual's customary occupation, and the distance of the available work from the individual's residence.

[*N.J.S.A.* 43:21–5.]

Scarcely any decisional law deals with the issue whether an employee who refuses an offer of reemployment from the former employer is disqualified for benefits. The Appellate Division addressed the issue in *Wm. Flemer's Sons, Inc. v. Board of Review,* 176 *N.J.Super.* 400, 423 *A.*2d 667 (1980). There, agricultural workers were employed by a New Jersey farming enterprise pursuant to a twenty-eight-week contract, at the expiration of which the workers returned to Puerto Rico and filed a claim for unemployment benefits. That the employer had offered the workers continued employment was undisputed. The Board of Review held that the employees were eligible for benefits because the term of their contract had expired. The Appellate Division disagreed, concluding that the workers' refusal to accept an offer of reemployment was a factor to be considered, together with other evidence, in determining whether the workers had failed without good cause to accept an offer of suitable work pursuant to *N.J.S.A.* 43:21–5(c).

In my view, a remand to the agency to determine the issue it did not reach—whether petitioner failed without good cause to accept an offer of suitable work—is the appropriate disposition of this appeal. Our decisions emphasize the fact-sensitive nature of that inquiry.

The emphasis is upon the claimant's attachment to *the* labor market, not to a particular job or a particular employer, save as a claimant's refusal to accept an employer's offer of suitable work may bear on the question.... The determination entails primarily a probe of the claimant's good-faith intention to work and "it should be evident that no single approach to availability can be satisfactory in all cases."

[*Krauss, supra,* 13 *N.J.* at 458, 100 *A.*2d 277 (quoting Altman, *Availability for Work* 131 (Harv.Univ. Press 1950).]

I am convinced that the Court has too hastily dismissed the appeal of this *pro se* petitioner. In doing so, the Court may have overlooked some of the most basic principles underlying the Unemployment Compensation Act:

> The basic policy of the law is advanced as well when benefits are denied in improper cases as when they are allowed in proper cases. The contest of a claim before the agency is not, therefore, an adversary proceeding in the usual sense.
>
> . . . .
>
> Plainly the statute casts upon the agency, as respects both original and appellate determinations, the role actively to press the interested parties to produce all relevant proofs at their command and, when necessary, independently to take steps to get the facts, as, for example, when the record made by the parties is unsatisfactory or there is fair reason to doubt the reliability of the proofs as a basis for decision or the agency in any case has reason to believe that additional facts obtained and made part of the record on its own initiative will contribute to a correct result.
>
> [*Id.* at 455–57, 100 *A.*2d 277.]

As noted, an adequate record undoubtedly would have substantiated petitioner's claim that she had been discharged. The agency would then have focused its inquiry on whether petitioner remained available for work in the labor market. Pertinent, but not decisive, to that inquiry was whether petitioner had good cause to reject the hospital's offer of reemployment. Accordingly, I would reverse the judgment of the Appellate Division and remand the matter to the Board of Review for further proceedings consistent with this opinion.

Justice O'HERN joins in this dissent.

*For reversal and remandment*—Justices O'HERN and STEIN—2.

*For dismissal*—Chief Justice PORITZ, and Justices HANDLER, POLLOCK, GARIBALDI and COLEMAN—5.