MAE B. REGER *v.* ADMINISTRATOR, UNEMPLOYMENT COMPENSATION ACT.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued February 5—decided April 4, 1946.

*James F. Rosen,* with whom were *Milton Rice* and, on the brief, *Alexander Winnick,* for the appellant (plaintiff).

*Harry Silverstone,* assistant attorney general, with whom, on the brief, was *William L. Hadden,* attorney general, for the appellee (defendant).

BROWN, J. This is an appeal from the denial by the unemployment commissioner for the third district of the plaintiff's claim for unemployment compensation benefits. The Superior Court sustained the commissioner and the plaintiff has appealed to this court.

The material facts as found by the commissioner may be thus summarized: The plaintiff, a married woman thirty-one years of age, with no children, was employed as a bookkeeper by a wholesale grocery firm in New Haven from March, 1943, until January, 1944. She then voluntarily left that employment to go to Ozark, Alabama, where she joined her husband, who, as a member of the United States Army, was stationed at Camp Rucker nearby. She expected to remain in that locality about a year. Ozark has a population of forty-five hundred and its principal industries are textiles, lumber and the manufacture of peanut and cottonseed oils. Dothan, the largest town in that region, is twenty-eight miles away and has twenty-five thousand inhabitants. Its principal industries are transportation as carried on in the general offices of a railroad, wholesale distribution, peanut and cottonseed oil processing, textiles and lumber. In both places retail trade is at a very high level, but in Ozark the other work is on a seasonal basis which starts about September 1. The plaintiff filed claims for unemployment benefits covering the period from April 30 to July 16, 1944. Throughout this time she was physically and mentally able to work and was classified as a general office clerk, but would accept any office employment for which she could qualify, starting at $15 per week, and was willing to work any hours of the day and to travel thirty miles to her work. Many employers in Ozark and Dothan would not employ servicemen's wives because of the uncertainty of the length of time they would remain in that area. Five of the two hundred and nine placements made by the United States employment office at Dothan in May, 1944, were of office workers. The plaintiff refused no referrals by the employment office. She independently applied for a position as clerk-typist with the civil

service commission at Camp Rucker but was advised that there were no jobs available. She also applied for a position with the U.S.O. in Ozark but was not hired because she was unable to take dictation, a requirement of the job.

The court's memorandum of decision shows that the controlling conclusion which it reached in deciding that the plaintiff was not "available for work" within the requirement of General Statutes, Cum. Sup. 1939, § 1339e (2) was, as recited in one of the plaintiff's assignments of error, "that the [plaintiff] had followed her soldier husband to Ozark, Alabama, and had voluntarily left employment in an active labor market in order to relocate in a place where she could not be reasonably expected to obtain suitable work." Whether the test of availability for work implicit in this conclusion was correct is the question for determination. "The act was adopted in consequence of the enactment of the federal social security acts. . . . It was designed to ameliorate the tragic consequences of unemployment. . . . pursuant to the plan effective under it, a fund is created by employers' involuntary contributions, out of which employees who lose their jobs may, after a waiting period, be paid benefits limited in amount and duration, while looking for work but unable to find it. . . . That the purpose of the act is remedial in character is clear. It is therefore to be construed liberally as regards beneficiaries, in order to accomplish its purpose." *Waterbury Savings Bank v. Danaher,* 128 Conn. 78, 82, 20 Atl. (2d) 455. The only question is whether or not upon the facts found the plaintiff was "available for work" within the meaning of the act.

An explanation and definition of the meaning of this phrase has been well set forth in these words: "The availability requirement is said to be satisfied when

an individual is willing, able, and ready to accept suitable work which he does not have good cause to refuse, that is, when he is genuinely attached to the labor market. Since, under unemployment compensation laws, it is the availability of an individual that is required to be tested, the labor market must be described in terms of the individual. A labor market for an individual exists when there is a market for the type of services which he offers in the geographical area in which he offers them. 'Market' in this sense does not mean that job vacancies must exist; the purpose of unemployment compensation is to compensate for the lack of appropriate job vacancies. It means only that the type of services which an individual is offering is generally performed in the geographical area in which he is offering them." Freeman, 55 Yale L. J. 123, 124. "In short, the test of a worker's availability is subjective. As long as no provision of the Act disqualifies him, he is entitled to its benefits . . . when he has exposed himself unequivocally to the labor market." *Mishaw* v. *Fairfield News,* 12 Conn. Sup. 318, 321.

Upon the facts found, there are two aspects of the case to be considered. The decisive question under the first is: Was there a market for the type of services the plaintiff could perform in the area where she was? The fact that there are more persons in the area qualified for a certain type of position than there are positions of this kind to be filled does not necessarily negative the existence of such a market. The question is not whether the plaintiff has a reasonable opportunity to get work of the kind she can do, but whether there is a "labor market" for such work. The commissioner concluded that the plaintiff had removed herself from an active labor market to a locality where none existed. In view of the meaning of "labor mar-

ket" as just explained, it is apparent that there are neither subordinate facts found by the commissioner nor anything else in the record to sustain the conclusion that there was no such labor market in and around Ozark.

The other phase of the question is concerned with the reliance placed by the commissioner in his decision upon the fact of the impermanence of the plaintiff's stay in Ozark. This involves the effect of a person's inability to get work owing to the unwillingness of employers to hire her because of the probable transient or temporary nature of her sojourn in the community, a reason not inherent in the general labor situation. "Where employers refuse or are reluctant to hire an individual, suitable job opportunities which the individual is qualified to perform and which he is able, willing, and ready to accept may nonetheless exist. Such refusal to hire a worker does not of itself render the work unsuitable or prevent him from legally performing the work. Accordingly, refusal of employers to hire married women [7935—Mass. R, Ben. Ser., Vol. 6, No. 5], individuals beyond a certain age [9141—Ill. R, Ben. Ser., Vol. 8, No. 2], or members of minority groups [9352—N. J. A. Ben. Ser., Vol. 8, No. 4] should not render unavailable individuals in any of such groups who are otherwise available. . . . While employers, for what they think is in their best interests, or for any reason, may refuse to hire any worker, such refusal should not affect the availability of workers whom they refuse to hire, unless such refusal is required by law." Freeman, 55 Yale L. J. 123, 133. That employers would not employ servicemen's wives because of the uncertainty of the length of time they would remain in the area was not a material factor in determining whether the plaintiff was available for work. For the reasons stated, the test of her availa-

bility for work which the court applied was incorrect.

It necessarily results that the trial court was in error in holding that the commissioner acted properly in denying compensation to the plaintiff. It should have sustained the appeal and remanded the case to the commissioner to make an award of benefits to the plaintiff. See *Thompson* v. *Twiss*, 90 Conn. 444, 446, 97 Atl. 328; *France* v. *Munson*, 123 Conn. 102, 106, 192 Atl. 706.

There is error, the judgment is set aside and the case is remanded to the Superior Court with direction to remand the case to the unemployment commissioner for the third congressional district to make an award of benefits to the plaintiff.

In this opinion the other judges concurred.