ANNA VALENTI, PLAINTIFF-RESPONDENT, v. BOARD OF REVIEW OF THE UNEMPLOYMENT COMPENSATION COMMISSION OF NEW JERSEY, DEFENDANT-APPELLANT.

Argued February 20, 1950—Decided March 27, 1950.

288

*Mr. Clarence F. McGovern* argued the cause for appellant.

*Mr. Joseph P. De Luca* argued the cause for respondent. *Mr. Edwin Segal,* attorney.

The opinion of the court was delivered by

HEHER, J.  The question here is whether respondent is eligible for unemployment benefits under *R. S.* 43:21–4(c), as amended by ch. 35 of the Session Laws of 1947. *P. L., p.* 94.  It is conceded that the amendment accomplished by ch. 110 of the.Laws of 1948 (*P. L., p.* 586) is not involved.

The Board of Review of the Unemployment Compensation Commission found that respondent had refused suitable employment without good cause, and is therefore ineligible for benefits except for one month.  The Appellate Division of the Superior Court resolved that the tendered employment "was not suitable," and "she had good cause to refuse it," and reversed the judgment.  We certified the judgment for appeal on the motion of the Board of Review.

There is no controversy as to the facts.  They have been settled by stipulation.  The claimant has followed "the trade of hand sewing and finishing men's coats" for a period of 23 years.  Since 1945, she has been licensed "as a hand sewing home worker" by the State Department of Labor.  From sometime in the year 1945 until October 11, 1947, she was employed as a "home worker" in that capacity by A. Di Paola and Company, and rendered "satisfactory service."  During that period, there were enforced contributions from earnings to the Unemployment Compensation Fund as provided by the statute.  The employer "discontinued all home work as a matter of business policy," and offered the claimant and other home workers like employment in its factory.  The claimant refused the proffered employment for reasons of health.  She is 54 years of age and "allergic to vehicular transportation." The "slightest jostling incident" to transportation by motor vehicle brings on nausea and "frequently * * * a very violent sickness."  She suffers from a "high state of nervousness which prevents her from working in a shop or factory." She "walks with difficulty and, therefore, is unable to cover

the approximate mile and one-half which separates her home from the factory" of her former employer. She "has made effort to find home work employment which * * * is the only kind of work she can do," but to no avail. A "study of home work in the area in which claimant resides" made November 28, 1947, by the Department of Labor reveals that "home workers were employed in the Camden area" by but two employers: "one, the Pearl Garment Co., which employed two home workers, and the other, Louis Seitchik, who employed one home worker." Neither has a place for another home worker. And, it may be added, there is no suggestion that a market for home service is in prospect.

The policy of the particular provision of the Unemployment Compensation Act is the relief of "involuntary unemployment," not the provision of insurance against the consequences of sickness. *R. S.* 43:21–2. *Vide P. L.* 1948, *p.* 586, *c.* 110, referred to *supra.* To qualify for such benefits, it is essential that the unemployed claimant be "able to work" and "available for work." *R. S.* 43:21–4(c). This section prescribes a status indispensable to the operation of the act. It sets down the legal capacities and the nature of the relation to the State's economy which condition the right to resort to the fund created to serve the statutory policy. It is requisite that the unemployed workman have what has been termed a "genuine attachment to the labor market." He must be capable of employment. The availability requirement is satisfied only when the workman is able, willing and ready to accept "suitable work which he does not have good cause to refuse." *Muraski v. Board of Review of U. C. C.,* 136 *N. J. L.* 472 (*Sup. Ct.* 1948); *Reger v. Administrator, Unemployment Compensation Act,* 132 *Conn.* 647, 46 *A.* 2d 844 (1946); *Freeman,* 55 *Yale L. J.* 123.

There is no market for home work of the particular class, or generally for home work suitable for the claimant, in the geographical area in which she has her residence; and since the claimant is unable, for reasons of health and physical shortcomings, to render like service or any other service what-

ever beyond the confines of her home, she is not "able to work" within the concept of the statute. Her availability for work is so restricted. as to render her unemployable. Compare *W. T. Grant Co. v. Board of Review of U. C. C.,* 129 *N. J. L.* 402 *(Sup. Ct.* 1943). She is not in the labor market. Where, as here, there is no market for home work, unsuitability for work of every description beyond the claimant's home, due to physical infirmities and limitations, puts the claimant outside of the favored category. There is in that event a want of the ability and availability for work which are essential to the statutory status. The fact that but three individuals are engaged in home work in the area in which•the claimant resides demonstrates the lack of a market for that type of work. Its rarity suggests that, for reasons of economic policy, home work is not an accepted mode of service in that community. The claim here pressed proceeds on the contrary hypothesis: it suggests that home service has such general acceptance as to give rise to a market for such labor which serves to place the claimant within the beneficiary class, even though she is physically unable to do the same or similar work at the employer's plant or elsewhere or to undertake any type of service or employment outside of her home. There is a distinction in the statutory view between "eligibility" and "disqualification." *Muraski v. Board of Review of U. C. C., supra.* Compare *Department of Labor & Industry v. U. C. Board of Review,* 159 *Pa. Super.* 571, 49 *A.* 2d 259 (1946).

The allowance of benefits in these circumstances would do violence to the reason and spirit of the statute; it would subvert its expressed policy of aid to the unemployed who are able to work and are available for work. The spirit of a statute gives character and meaning to particular terms. The reason of the law, *i. e.,* the motive which led to the making of it, is one of the most certain means of establishing the true sense. *Edgewater v. Corn Products Refining Co.,* 136 *N. J. L.* 664 *(E. & A.* 1948); *City Affairs Committee of Jersey City v. Department of Taxation,* 134 *N. J. L.* 198

(*Sup. Ct.* 1946); affirmed, *Ibid.*, 614 (*E. & A.* 1946). It is not "the words of the law, but the internal sense of it that makes the law." *Eyston v. Studd, 2 Plowd.* 459 (at *p.* 465); 75 *English Reprint* 695. The declared policy is the true key to open the understanding of the statute.

The construction of specific terms must be consistent with the general purpose the law was designed to achieve. The provisions relating to eligibility and disqualification are to be interpreted in the light of the statutory concept of social insurance against the hazards of involuntary unemployment, by compensation to the unemployed for the consequent wage loss. The unemployment is not involuntary in the legislative sense where the workman is unable to work or is unavailable for work. The latter element necessarily embraces the former. These are general terms which are made specific by the context. The statutory category comprises workers able to work and available for work in a labor market that for the time being offers no employment opportunities. Such is not the case before us.

The judgment of the Appellate Division is reversed, and the judgment of the Board of Review is affirmed.

*For reversel*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD and BURLING—6.

*For affirmance*—None.