CRABTREE, J. T. C.
This is a local property tax case wherein plaintiff seeks review of judgments of the Essex County Board of Taxation reducing the assessment for the years 1974 through 1977 on defendant’s property located at 5 Lawrence Street, Bloomfield, New Jersey (Block 61, Lot 1). The assessment and county board action thereon for all years in issue was:
Assessment County Board Judgment
Land $ 526,900 $526,900
Improvements 1,477,300 254,300
Total $2,004,200 $781,200
Plaintiff seeks restoration of the assessment while defendant asks for a further reduction.
This case was tried before the Division of Tax Appeals, which entered judgment dismissing plaintiff’s appeal on November 15, 1979. Thereafter, plaintiff appealed to the Superior Court, Appellate Division, which reversed the Division judgment and remanded the case to this court for a trial de novo. The parties have agreed that I may decide the case on the record made before the Division of Tax Appeals.
*224 At issue are the true value of the property and whether defendant is entitled to the benefits of the Freeze Act, N.J.S.A. 54:2-43, for 1974 and 1975.
The subject of the controversy is an industrial complex consisting of a series of one- to six-story buildings containing, in all, 677,214 square feet, sited on 12.92 acres of land. During the four pretax years involved the buildings were demised to a number of industrial and commercial tenants at square foot gross rentals which included tax contributions, expense reimbursements and cost of living adjustments. The magnitude of demised square foot area ranged from 601,366 square feet in 1973 to 615,375 square feet in 1975.
The property was sold in its entirety on October 25, 1978 pursuant to a contract of sale dated September 11, 1978. The consideration was $2,400,000, payable $500,000 in cash and a purchase money, nonrecourse note and mortgage for $1,900,000 with interest at 6% a year. The mortgage was amortized over a ten-year period on a monthly direct reduction basis, with a final principal installment of $418,000 due at maturity. Mortgage interest rates generally prevailing for properties similar to the subject were between 10% and 12% at the time of the sale. The contract of sale gave the purchaser an option to buy the property for $2,100,000 on an all-cash basis, /. e., with no purchase money financing by the seller. The purchaser did not avail himself of that option.
Defendant’s appeal for tax year 1973 with respect to the subject property was disposed of by final judgment entered in the Division of Tax Appeals on August 16, 1974, fixing the assessment at $923,000. Notwithstanding that judgment defendant prosecuted its appeals for 1974 and 1975 in the Essex County Tax Board, obtaining from that tribunal the assessment reduction set out above.
The subject property is located in Bloomfield and East Orange. Approximately 80% of the total land area lies within plaintiff taxing district, while about 51.3% of the total square footage of building space is physically located in Bloomfield. *225 The property also includes a separately assessed parcel (Block 94, Lot 44) in Bloomfield which serves as a parking lot for the complex. The assessment on that parcel, however, is not before this court.
Both experts treated the entire industrial complex as a single economic unit, arriving at an aggregate value from which they deducted values attributable to East Orange and the parking lot.
Plaintiff’s expert determined the aggregate value to be $2,400,000 for all years in issue, relying in equal measure upon the market and income approaches. His market approach included the aforementioned sale of the subject at $2,400,000, the price for which the property actually sold on a deferred payment basis. The expert ignored the alternate cash price of $2,100,000. In the development of his income approach he stabilized economic rent and expenses for all years, making a slight downward adjustment from actual average rent of $1.88 a square foot to $1.80 a square foot except for the rent payable by Associated Book Service, which he adjusted upward from an average actual rent of 75$ a square foot to 85$ a square foot on the ground that the actual rent reflected a lease negotiated in the early 1960s and was, therefore, an unreliable indicator of economic rent.
He postulated a 12% vacancy factor on the basis of the owner’s actual experience over the four years involved.
The expert stabilized expenses at $307,472, a reduction from average actual expenses of $370,513. He attempted to justify this adjustment on the ground that the claimed expenses may have included items for which the lessor was reimbursed by tenants.
The final step in the development of the expert’s income-based value estimate, before allocation between Bloomfield and East Orange, was the application of a capitalization rate of 18.916% using the property residual method, which included an average Bloomfield tax rate of 5.72%. He did not take the East Orange tax rate into account in the calculation of his capitalization rate. His capitalized net income produced a value estimate for the entire complex of $2,438,900, rounded down to $2,400,000.
*226 The expert’s seven comparable sales of industrial properties bore virtually no common characteristics. They all diverged substantially, one from another, in terms of land area, square footage of improvements, sale date and unit price. From this collage the expert postulated a unit price range, excluding extremes, of $3.29 to $4.29, focusing upon $3.54 and deriving therefrom a value of $2,370,000 ($3.54 X 667,214 square feet), rounded up to $2,400,000.
The expert then allocated land values between plaintiff municipality and East Orange on the basis of acreage, which he calculated, on the basis of comparable land sales, to be worth $100,000 an acre in both taxing districts. He allocated improvement values between the two taxing districts on a gross rental basis.
Finally, plaintiff’s expert subtracted the land assessment of $249,400 imposed upon the parking lot. The total assessment for that parcel was $261,000. The product of all these adjustments was a value estimate of $1,513,000 allocable to Bloomfield for all years under review.
Defendant’s expert determined the aggregate value to be $1,940,000 for all years involved, relying primarily upon the income method, although he did support his conclusion with the market approach, using, in that regard, eight allegedly comparable sales of improved industrial properties. His determination of economic rent was predicated upon inquiry of asking rents for the subject; he used no comparable leases notwithstanding his assumption that the subject was not unique. He stabilized expenses at the October 1,1973 level, posited a vacancy and loss allowance of 10% and, to the net income thus derived, he applied a capitalization rate of 19.89% calculated under the property residual method. He did not place a separate value on the land. His capitalization rate included an average tax rate of 6.89%[1], *227 weighted in proportion to the square feet of building area located in Bloomfield and East Orange (54% to Bloomfield, 46% to East Orange). He then allocated the total value between the two taxing districts according to the square feet of building area and subtracted the value of the parking lot, which he assumed to be $264,000, for a final true value allocable to Bloomfield of $786,000 for all years.
The market data approach used by both experts can be dealt with summarily. The comparable sales selected by both experts involve too many dissimilarities with the subject to admit of reasonable comparison. Venino v. Carlstadt, 1 N.J.Tax 172 (Tax Ct. 1980). Accordingly, I reject the market data approach used by both experts.
Plaintiff’s expert, however, relies to some unspecified degree on the 1978 sale of the subject for a time price of $2,400,000 as a valid indicator of market value for all years. His reliance is misplaced. While it is true that the selling price of real property involved in a judicial determination of its taxable value is evidential of fair value, R.M.P. Holding Co. v. Passaic, 1 N.J.Tax 359 (Tax Ct. 1980), the sale must be scrutinized for circumstances tending to increase or depress the sales price in derogation of the property’s true value. Rek Investment Co. v. Newark, 80 N.J.Super. 552, 194 A.2d 368 (App.Div.1963); Niktan Realty Co. v. Passaic, 1 N.J.Tax 393 (Tax Ct. 1980). I find that the $300,000 difference between the time price actually paid for the property and the cash price available to the buyer under the contract of sale was a premium for the below-market interest rate on the mortgage taken by the seller. Petrizzo v. Edgewater, 2 N.J.Tax 197 (Tax Ct. 1981). Also, the nonrecourse character of the mortgage note executed by the buyer is rele *228 vant to the probative utility of the sale. A valid sale, in economic terms, usually involves a shift of economic risk from seller to buyer, Niktan Realty Co. v. Passaic, supra, and the shift was incomplete in this case. The absence of personal liability on the part of the buyer left the seller dependent upon the rentals from the property for payment of both principal and interest on the $1,900,000 mortgage note.
For these reasons I give no weight to the 1978 sale of the subject property in determining its true value.
Quite apart from the weaknesses of the market data approach used by the experts I find that the income approach is the most suitable method for determining the true value of the subject property. It is well settled in this State that the income approach is of preponderant influence in the valuation of income properties. Parkview Village Ass’n v. Collingswood, 62 N.J. 21, 297 A.2d 842 (1972); Helmsley v. Fort Lee, 78 N.J. 200, 394 A.2d 65 (1978), app. dism. 440 U.S. 978, 99 S.Ct. 1782, 60 L.Ed.2d 237 (1979); G & S Co. v. Eatontown, 2 N.J.Tax 94 (Tax Ct. 1980).
The income approach of defendant’s expert is entitled to no probative weight. His estimate of economic rent is based on nothing more than speculation. He offers no economic rent analysis, no. comparable leases, not even a conclusion that the actual rent was the economic rent. The probative weight of an expert’s opinion depends on the facts and reasoning adduced in support thereof and, without explanation as to the basis, such opinion is entitled to little or no weight. Dworman v. Tinton Falls, 1 N.J.Tax 445 (Tax Ct. 1980).
I find that plaintiff’s expert presented a sounder approach and a more reasonable view as to the value of the subject property and, with some adjustments to be detailed hereafter, I accept the components of his income approach.
Plaintiff’s estimate of economic rent finds adequate support in the record and, on the basis of his analysis, I find the economic rent, stabilized for all years in issue, to be 85$ a square foot for 380,000 square feet leased to Associated Book Service *229 and $1.80 a square foot for the balance, inclusive of tenant tax contributions and expense reimbursements. I also accept the expert’s vacancy and loss allowance of 12%, as it reflects the actual experience of the owner over a period of years and is a reasonable indicator of the projected quality and durability of the rental income stream.
I find, however, that the expense levels posited by plaintiff’s expert are not supported by the record. He estimated expenses, stabilized for all years, at $307,472, disregarding the stabilized actual expenses of $370,513. He testified that the larger amount may have included reimbursable items and unsubstantiated expenses. The credible evidence contradicts his testimony in this regard. I will therefore use the actual average expenses of $370,513 in determining value under the income approach.
The expert’s capitalization rate of 18.916%, while generally indicative of the marketplace, did not reflect the East Orange tax rate even though a substantial part of the complex was located in that taxing district. I find that valuation of the entire complex by the income method requires recognition of taxes paid to East Orange, and I will weight the average tax rates of the two municipalities according to the proportion of gross economic rents allocable to each of them. Thus, 64.5% of taxes are attributed to Bloomfield, with 35.5% allocable to East Orange. The average actual tax rate used in the capitalization process will, accordingly, be 6.68%[2].
In view of the foregoing I find the true value of the entire industrial complex, before allocation to East Orange and reduction for the parking lot, to be $2,003,420, calculated under the income method as follows:
380,000 sq. ft. @$0.85 $ 323,000
297,214 sq. ft. @$1.80 534,985
Parking rental, $1,295 x 12 15,540
$ 873,525
*230 Less vacancy and loss allowance (12%) $ 104,825 Effective gross income 768,700
Less expenses (rounded) 370,500
Effective net income 398,200 Capitalized at 19.876%
True value (rounded) $2,003,420
The method adopted by plaintiff’s expert to allocate the East Orange portion is more realistic than the method chosen by defendant’s expert. The use of gross rentals as the measure of apportionment takes into account the differing tax climates of the two taxing districts, and tax rates have an effect upon the value of industrial property. Fullerton, “Appraisal of Industrial Property,” Encyclopedia of Real Estate Appraising (3 ed. 1978), 477, 487.
The method selected by plaintiff’s expert to allocate land values between Bloomfield and East Orange is unsound. The comparable land sales used to support his allocation on the basis of $100,000 an acre are too remote in time and too disparate in size to be of probátive significance. Accordingly, land values will be apportioned on the basis of the assessed values of the Bloomfield land (including the parking lot) and the percentage of total land area in each taxing district. Under this method the assessed value of land located in Bloomfield is $776,300, which represents 79.2% of total land value, and the total value, including East Orange land, is $980,177. The latter figure will be subtracted from the total true value of the entire complex in order to ascertain the value of improvements allocable to East Orange.
On the basis of the foregoing, then, the true value allocable to the subject property under review in this proceeding for all years in issue, is $1,175,300, calculated as follows:'
Value of entire complex $2,003,420
Less total land value (rounded) 980,170
*231 Residual value of improvements $1,023,250
Less value of East Orange improvements (35.5%) (rounded) 363,250
Value of improvements in Bloomfield 660,000
Less improvement on parking lot (assessed value) 11,600
Value of improvements on property under review 648,400
Add land assessment on property under review 526,900
$1,175,300
Defendant seeks the application of N.J.S.A. 54:2-43 (the Freeze Act) to the years 1974 and 1975 on the basis of the Division of Tax Appeals judgment for 1973, entered on August 16, 1974, fixing the assessment on the subject property at $923,000. The disposition of defendant’s claim requires an examination of the Freeze Act and its relation to the equitable doctrine of election of remedies.
The Freeze Act declares, in substance, that a final judgment of the Division of Tax Appeals (now the Tax Court) fixing the assessment for a given year is binding and conclusive upon the taxing district and its assessor for that year and the two succeeding years, absent a change in value or district-wide revaluation. The act may be invoked at the exclusive option of the taxpayer, and it is not available to municipalities or third parties. Hasbrouck Heights v. Tax Appeals Div., 41 N.J. 492, 197 A.2d 553 (1964); Eckardt v. Sisler Enterprises, 1 N.J.Tax 25 (Tax Ct. 1980).
The doctrine of election of remedies applies where a party, having knowledge that a choice exists, is confronted with a choice of alternative and inconsistent remedies. Deerhurst Estates v. Meadow Homes, Inc., 64 N.J.Super. 134, 165 A.2d 543 (App.Div.1960) certif. den. 34 N.J. 66, 167 A.2d 55 (1961); Ray v. Beneficial Finance Co., 92 N.J.Super. 519, 224 A.2d 143 (Ch.Div. *232 1966). Here, defendant was aware of the choice between the Freeze Act and litigation on the merits of the 1974 and 1975 assessments as early as August 16, 1974. The Freeze Act remedy is inconsistent with pursuit of the remedy of the lower assessment through trial on the merits.
Defendant made an unequivocal election before this court[3] to proceed to judgment on the merits. Defendant made no motion to apply the Freeze Act, as it could have done prior to giving its consent to a decision by this court on the record before the Division of Tax Appeals. Defendant’s failure to do so was an election to seek the remedy of an assessment below the level of the 1973 Division of Tax Appeal judgment and a waiver of the Freeze Act remedy. International Fastener Research Corp. v. Kearny, 2 N.J.Tax 494 (Tax Ct. 1981).
Judgment will be entered adjudicating the assessment for all years to be as follows:
Land $ 526,900
Improvements 648,400
Total $1,175,800

The actual tax rates in both taxing districts were as follows:
*227 Bloomfield East Orange
1974 5.10 9.47
1975 5.45 7.85
1976 6.10 8.61
1977 6.22 7.74

. 5.72 x 64.5% = 3.69
8.42 x 35.5% = 2JJ9
6.68

The trial before the Division of Tax Appeals is here regarded as a nullity. The Superior Court, Appellate Division, reversed and remanded the case to the Tax Court for a new trial.