ANDREW, J.T.C.
In this motion for judgment pursuant to the Freeze Act, N.J.S.A. 54:2-43, plaintiffs present an issue that has not been previously subjected to judicial scrutiny. The question is whether plaintiffs can obtain freeze judgments for tax years 1978 and 1979 based on a final judgment for 1977 after it has litigated the tax years of 1977, 1978 and 1979 in a consolidated proceeding.
This local property tax matter originally involved the issues of the proper valuation of a 15-story apartment building and *408 whether inequality in assessment existed in the taxing district. This matter has had a complicated procedural history which should be recounted. The original assessments, all in the amount of $1,974,000 and affirmed by the Monmouth County Board of Taxation, were appealed to the Tax Court.[1] See Murnick v. Asbury Park, 2 N.J.Tax. 168 (Tax Ct.1981). The issues before the court were the true value of the subject property for each of the years in question, and the proper ratio to be applied to the 1978 valuation in order to relieve plaintiffs from inequality in assessment. For the tax years 1977 and 1979, the parties stipulated that the Director of the Division of Taxation’s average sales-assessment ratio would be substituted for the lack of a common level of assessment within the municipality. Id. at 174.
As to the applicable ratio for 1978, plaintiffs contended that the Director’s sales-assessment ratio for 1978 should be applied to true value, while defendant argued that relief pursuant to N.J.S.A. 54:2-40.4 (Chapter 123) was the exclusive remedy for discrimination in assessment. Id. at 175. The Tax Court determined that Chapter 123 failed to provide an adequate and equitable remedy in this case and applied the Director’s average ratio for 1978. Id. at 191. Applying the stipulated ratios for 1977 and 1979, and the Director’s average ratio for 1978 to its determinations of true value, the court directed the following judgments:
1977 1978 1979
Land $ 53,700 $ 53,300 $ 46,700
Improvements 1,543,200 1,588,300 1,475,300
Total $1,596,900 $1,641,600 $1,522,000
Id. at 192.
Upon appeal to the Appellate Division, the judgment for the 1977 tax year was affirmed. There was no challenge to the *409 valuations determined by the Tax Court, but defendant did challenge the discrimination relief granted the taxpayer for tax years 1978 and 1979, arguing that Chapter 123 was the exclusive remedy, and that application of Chapter 123 in both years would have barred relief. The Appellate Division concluded that “the Legislature mandated the use of Chapter 123 as an exclusive remedy subject to the exceptions contained therein.” Murnick v. Asbury Park, 187 N.J.Super. 455, 459, 455 A.2d 504 (App.Div. 1982), certif. den. 93 N.J. - (1983), appeal docketed, No. 20,701 (Jan. 3, 1983). Accordingly, the judgment for the tax year 1978 was reversed, and the judgment for 1979 was vacated and remanded. Id. at 463, 455 A.2d 504. Plaintiffs have since filed a notice of appeal with the New Jersey Supreme Court from that part of the Appellate Division decision dealing with the 1978 and 1979 tax years.
Plaintiffs now move for an application of the Freeze Act, N.J.S.A. 54:2-43, fixing the assessment on the subject property for 1978 and 1979 at the same level as the judgment level for 1977. The Freeze Act, N.J.S.A. 54:2-43, provides:
Where a judgment final has been rendered by the tax court involving real property such judgment shall be conclusive and binding upon the municipal assessor and the taxing district, parties to such proceeding, for the assessment year and for the 2 assessment years succeeding the assessment covered by the final judgment, except as to changes in the value of the property occurring after the assessment date. Where such changes are alleged, the complaint shall specifically set forth the nature of the changes relied upon as the basis for such appeal. However, the conclusive and binding effect of such judgment shall terminate with the tax year immediately preceding the year in which a program for a complete revaluation of all real property within the district has been put into effect.
It is not contested that there has been neither a change in value nor a complete revaluation during the relevant period. Defendant does oppose the motion, contending that, by proceeding to trial on the merits for the 1978 and 1979 tax years, plaintiffs have made an election of remedies, thereby waiving Freeze Act relief.
Plaintiff relies upon Curtiss Wright Corp. v. Wood-Ridge, 4 N.J.Tax 68 (Tax Ct.1982), in which the taxing district increased an assessment which should have been subject to the freeze. *410 The taxpayer brought appeals for the freeze years and also moved for an application of the Freeze Act.[2] The court found that the taxing district, by increasing the assessment, violated the procedural requirements of the Freeze Act. Id. at 73-74. It was held proper in that case to permit an interim application of the freeze while the taxpayer pursued its claim for a reduction of the assessment. Id. at 82-85. The court’s decision appears to be based primarily upon the unfairness that resulted when the taxing district violated the procedural requirements of the freeze, thereby forcing the taxpayer to take some action to enforce its rights. Had the taxing district acted properly, no action on the part of the taxpayer would have been required.
As defendant points out, that situation is not present here. The taxing district has not violated the procedural requirements of the Freeze Act, since the 1977 judgment was issued subsequent to the 1978 and 1979 assessing dates. See Wayne Tp. v. Robbie’s Inc., 118 N.J.Super. 129, 286 A.2d 725 (App.Div.1972), certif. den. 60 N.J. 351, 289 A.2d 796 (1972); Curtiss Wright Corp., supra at 73; Hudson Terrace Apts. v. Fort Lee, 2 N.J.Tax 457, 461 (Tax Ct.1981). Too, it is not clear from the papers submitted by plaintiffs whether they seek only an interim application of the freeze, pending their appeal in the New Jersey Supreme Court.
Defendant argues that plaintiffs elected their remedy at the outset, “[hjaving waived the opportunity to try the 1977 case independently and thereafter seek Freeze Act relief for 1978 and 1979.” Defendant cites International Fastner Research Co. v. Kearny, 2 N.J.Tax 494 (Tax Ct.1981) and Bloomfield v. Parkway Industrial Center, 3 N.J.Tax 220 (Tax Ct.1981) as controlling in this motion.
In International Fastner the Tax Court entered a judgment for the 1978 tax year, and the taxpayer moved to apply the *411 Freeze Act for the 1979 and 1980 tax years. It apparently also instituted appeals for the same years. The court granted the Freeze Act motion and stated:
In moving for application of the freeze statute, plaintiff elected that remedy as distinguished from a trial on the merits of the assessments. Accordingly, the granting of the motion effectively disposes of the case. [Citations omitted] [2 N.J.Tax at 499].
In Parkway Industrial Center the taxpayer had obtained a Division of Tax Appeals judgment for the tax year 1973, which was entered on August 16,1974. The taxing district brought an action before the Division to restore assessments for the tax years 1974 through 1977 which had been reduced by the county board of taxation. After appeal, the case was eventually remanded to the Tax Court for a trial de novo. After consenting to a trial on the merits before the Tax Court, the taxpayer moved for an application of the Freeze Act to the 1974 and 1975 tax years on the basis of the Division’s judgment for the 1973 tax year. The court refused to apply the Freeze Act, noting that the taxpayer had been aware of the choice between the Freeze Act and litigation on the merits of the 1974 and 1975 assessments from the time that the 1973 judgment was entered in 1974. The court stated:
Defendant made an unequivocal election before this court to proceed to judgment on the merits. Defendant made no motion to apply the Freeze Act, as it could have done prior to giving its consent to a decision by this court on the record before the Division of Tax Appeals. Defendant’s failure to do so was an election to seek the remedy of an assessment below the level of the 1973 Division of Tax Appeal judgment and a waiver of the Freeze Act remedy. International Fastner Research Corp. v. Kearny, 2 N.J.Tax 494 (Tax Ct.1981). [3 N.J.Tax at 232].
In both International Fastner and Parkway Industrial Center then, the taxpayer had a base year judgment in hand, and was eligible for Freeze Act relief before the appeals for the freeze years were to be heard on the merits. In the present case, plaintiffs had no judgment for the 1977 base year until judgment was entered by the Tax Court on February 3,1981. Even then, the Freeze Act was not available to plaintiffs because the *412 judgment was not final within the meaning of the act. See Curtiss Wright Corp. v. Wood-Ridge, supra at 73 n. 4. The 1977 judgment was not final for purposes of Freeze Act relief until defendant’s appeal for that year was dismissed by the Appellate Division.
Defendant argues that plaintiffs waived Freeze Act relief by fully litigating all three tax years in a consolidated action, rather than litigating the 1977 assessment separately and then moving for application of the Freeze Act to the 1978 and 1979 tax years. In effect, defendant urges that plaintiffs should have foregone the only right they possessed at that time relative to their 1978 and 1979 assessments — the right of appeal — and instead gambled on the outcome of the 1977 appeal.
“Election of remedies” has been defined as “choosing between two or more different and co-existing modes of procedure and relief allowed by law on the same state of facts.” Murphy v. Morris, 12 N.J.Super. 544, 547, 80 A.2d 128 (Ch.Div.1951). Plaintiffs must actually have had a choice of alternative and inconsistent rights and remedies for the doctrine of election to apply. Deerhurst Estates v. Meadow Homes, Inc., 64 N.J.Super. 134, 146, 165 A.2d 543 (App.Div.1960), certif. den. 34 N.J. 66 (1961); See also Murphy v. Morris, supra 12 N.J.Super. at 547, 80 A.2d 128. At the outset of the litigation here, plaintiffs had no choice of remedy. It must be concluded that the concept of election is not determinative here.
It appears facially that plaintiffs’ application fits the statutory language utilized in the Freeze Act. However, while I may not completely subscribe to his point of view, I think it appropriate to refer to Judge Learned Hand’s well known remark that, “there is no surer way to misread any document than to read it literally.” Guiseppi v. Walling, 144 F.2d 608, 624 (2 Cir.1944), aff’d sub nom Gensco v. Walling, 324 U.S. 244, 65 S.Ct. 605, 89 L.Ed. 921 (1945).
*413 Where the plain language of a statute suggests a particular result and there are no indications of a contrary legislative design, the judicial function is clear. However, a failure to look at legislative history, motives and policy may result in a failure to accomplish legislative purpose. In Valenti v. Board of Review of U.C.C. of N.J., 4 N.J. 287, 291, 72 A.2d 516 (1950) Justice Heher noted that the motive which led to the making of a law is one of the most certain means of establishing its true sense. In Caputo v. Best Foods, 17 N.J. 259, 264, 111 A.2d 261 (1955) the court aptly remarked that the intention of an enactment is not ruled by its strict letter but by that which “emerges from the spirit and policy of the statute rather than the literal sense of particular items.” In Unemployed-Employed Council of N.J., Inc. v. Horn, 85 N.J. 646, 655, 428 A.2d 1305 (1981), Justice Handler observed that “statutory language must be read perceptively and sensibly with a view toward fulfilling the legislative intent.”
The purpose of the Freeze Act was to protect taxpayers from the harassment and the retaliatory motivation of a municipal assessment practice which would permit arbitrary annual assessment increases requiring taxpayers to seek annual relief from the county board.
As our Supreme Court observed in Newark v. Fischer, 8 N.J. 191, 84 A.2d 547 (1951):
The evil which the “freeze” statute sought to remedy was repeated yearly increases in the assessed value of property, not related to or justified by any changes increasing its market value, and resulting in harassment of the taxpayer, subjecting him to the trouble and expense of annual appeals to the county tax board.[3] [at 199-200, 84 A.2d 547].
It seems evident that the legislative design was to obviate yearly appeals with the concomitant cost and time consumption *414 where such litigation was unwarranted because there were no changes in property values.
In the present case, the subject property was assessed at the same level for the three years in question. Plaintiffs believed that those assessments were unjust, and thus appealed them. Defendant, however, did not wrongfully increase the assessment, resulting in harassment to plaintiffs as was the case in Curtiss Wright.
It is true that plaintiffs were subjected to the trouble and expense of.annual litigation, but this was not the result of any action by defendant. If the 1977 appeal had been resolved more promptly, plaintiffs would have been able to elect the freeze remedy for 1978 and 1979 before it became necessary to litigate those years. That a judgment for 1977 was not entered by the Tax Court until 1981 was not the fault of either plaintiffs or defendant, but was apparently due to a substantial delay in the former Division of Tax Appeals.
Notwithstanding the fact that plaintiffs were denied earlier Freeze Act relief because there was no base year judgment upon which such relief could be granted, the Freeze Act was not designed to provide a remedy for the situation in which plaintiffs now find themselves. The Freeze Act was not meant to be a vehicle for taxpayers to obtain lower assessments, but is a remedy to remove the necessity of yearly litigation in the face of unjustified annual increases in assessment. That litigation has now taken place, and application of the Freeze Act now obviously will not relieve plaintiffs from that burden.
Plaintiffs have been deprived of a statutory remedy. Whatever unfairness has resulted, however, was not caused by the defendant taxing district, so that the relief granted the taxpayer in Curtiss Wright is not appropriate here. Giving the statute the requisite construction consistent with the policy considerations of the Freeze Act, it is my conclusion that the Freeze Act cannot be applied to the present factual situation. Plaintiffs’ motion is denied. Defendant shall submit an appropriate order.

At issue in Curtiss Wright Corp. was the County Board Freeze Act, N.J.S.A. 54:3-26, rather than N.J.S.A. 54:2-13, applicable to Tax Court judgments.

The court was referring to the County Board Freeze Act, N.J.S.A. 54:3-26, but the same intent has been found for the Tax Court counterpart, N.J.S.A. 54:2-43, formerly applicable to Division of Tax Appeal judgments. See Hamilton Gardens, Inc. v. Hamilton Tp., 45 N.J.Super. 124, 127, 131 A.2d 559 (App.Div.1957).