[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This appeal is one of a small number of ground breaking cases[1]
which have been brought under the Affordable Housing Land Use Statute which was enacted by the legislature in 1989 as Public Act 89-311 and codified as 8-30g of the General Statutes. As such, it builds upon a foundation for a new era in land use jurisprudence whose purposeful design began in 1988 with the first report of the Blue Ribbon Commission on Housing, followed by a second report[2]
which provided the impetus for enactment of the statute. The cornerstone of this foundation is subsection (c) of the statute which (i) reverses well established precedent by shifting the burden of proof from the plaintiff to the defendant and (ii) mandates specific criteria that the defendant must satisfy in order to sustain that burden of proof[3]. Thus, in the field of affordable housing, gone are the days when a land use agency's decision was presumed to be good unless shown to be arbitrary, illegal or in abuse of its discretion.[4] Eden v. Town Planning and Zoning Commission, 139 Conn. 59 (1952); Whittaker v. Zoning Board of Appeals, 179 Conn. 650, 654 (1980).
The controversy in this cases arises from the decision of the Southington Planning and Zoning Commission to deny the plaintiff's application for an affordable housing development which would permit construction of 9 two-family houses (duplexes) and 26 single-family houses on a 35 lot subdivision. of this number, 10 are to be dedicated to affordable housing as defined by the CT Page 6065 statute. The application sought only an amendment to the zoning map so as to change the designation of the land from R-40 (single-family on 40,000 sq. ft. lots) to R-12 (single and two family on 12,000 sq. ft. lots). The property is located on the southerly side of the Meriden-Waterbury Turnpike (State Route 322) and is bounded by the R-40 on the south and west; the R-20/25 (single family on 20-25,000 sq. ft. lots) on the north; by the B (Business) zone on the east, and the R-40 on the south. The property is accessible to and can be served by municipal water and sewer.
The applicant proposes to meet the alternative definition of affordable housing found in 8-30g(a)(1)(B) by subjecting no less than 20% of the dwelling units to covenants or restrictions "which shall require that such dwelling units be sold or rented at, or below, prices which will preserve the units as affordable housing as defined in 8-39 or . . . for at least 20 years after the initial occupation of the development".
The defendant conceded at oral argument that the application was in fact an affordable housing application within the meaning of8-30g(a)(2).
The threshold jurisdictional issue in this case as in any zoning appeal is aggrievement. 8-30g(b) introduces a new notion into the concept of aggrievement. Unlike 8-8, 8-30g(b) arguably creates a different basis for standing to appeal the denial of an affordable housing application. Apparently, "any person who is denied or is approved with restrictions which have a substantial adverse impact on the viability of the development", has standing to appeal. On the other hand, if traditional rules governing aggrievement apply, this plaintiff qualifies under both standards. The evidence at trial demonstrated that not only was the plaintiff denied its affordable housing application but also has been the uninterrupted owner of the property in question since 1987 to the present day. It is noted that record title to the property is in the name of Edward H. Rogers, Daniel S. Hurst and William D. Norrie, doing business as Pratt's Corner Partnership. The evidence at trial indicated that all three persons sustained their interest in the real estate during this same period of time. Thus, the plaintiffs Rogers, Hurst, Norrie and Pratt's Corner Partnership are found to be aggrieved. Goldfeld v. Planning and Zoning Commission, 3 Conn. App. 72 (1985).
Having accepted this historic legislative change in the application of long established principles governing judicial CT Page 6066 review of the legislative action of a zoning authority in the context of affordable housing, no instructive purpose would be served by revisiting a history from which little useful dogma has survived.
The analysis in this case should begin with an understanding that the abiding purpose of the statute is remedial in character and therefore it should be liberally construed as regards its beneficiaries in order to accomplish its purpose. Reger v. Administrator, 132 Conn. 647, 650 (1946). "`It is a fundamental principle of statutory construction that statutes are to be construed so that they carry out the intent of the legislature' State v. Campbell, 180 Conn. 557, 561 (1980); 2 A. Sutherland, Statutory Construction (4 Ed. Sands, 1984) 45.05. In construing a statute this court will consider its plain language, its legislative history, its purpose and the circumstances surrounding its enactment. Peck v. Jacquemin, 196 Conn. 53, 64 (1985). Dukes v. Durante, 192 Conn. 207, 214-15 (1984). Identifying the societal problems which the legislature sought to address may be particularly helpful in determining the true meaning of the statute. State v. Campbell, supra, 562. Each word used by the legislature should be given effect and, as far as possible, the entire enactment is to be harmonized. State v. Grant, 176 Conn. 17,20 (1978). Winchester v. Connecticut State Board of Labor Relations, 175 Conn. 349, 355-56 (1978)." State v. Parmalee,197 Conn. 158, 161 (1985). (alternate citations omitted.)
The General Statutes are replete with forceful legislative expressions of the long standing statewide need for affordable housing both as defined in 8-39a and 8-30g. In the area of land use, the legislature first broached the concept of affordable housing when in 1984 it obligated every zoning commission, by regulation, to "encourage the development of housing opportunity for all citizens of the municipality consistent with soil types, terrain and infrastructure capacity." P.A. 84-263. In 1988, the General Assembly passed P.A. 88-338 "An Act Promoting The Development of Affordable Housing Through the Use of Municipal Planning and Zoning Authority" which authorized zoning commissions to enact regulations permitting special exemptions from density limits to developers who agree to construct units of affordable housing. In 1991, the legislature amended 8-2 to broaden the mandate for affordable housing to include the needs of residents of the planning region in which the municipality is located and to promote choice and economic diversity in housing for low and moderate income households. P.A. 91-392. This amendment not only CT Page 6067 applied to the legislative power of a land use authority but also to the planning power so that the municipal plan of development was thus required to reflect the mandate. Thus, in a sense it might be said that Connecticut has adopted some of the features found in Southern Burlington County NAACP v. Township of Mount Laurel, supra, and 456 A.2d 390 (1983). It is noteworthy that at the same legislative session, P.A. 91-398 was adopted to require municipal planning authorities to state on the record their findings on consistency of any proposed zoning change with their plans of development. Although it became effective after the defendant in this case acted it is mentioned only because it would apply in the event this case were to be remanded to the commission. By P.A. 92-50, 8-2 was further amended so as to enunciate the requirement that a zoning authority make regulations in accordance with a comprehensive plan[4]. In lieu of adherence to a comprehensive plan a zoning authority is now required to consider the plan of development in adopting its regulations yet still evidently not required to zone in accordance with it.
With this background, we turn now to the unfamiliar task of determining whether the defendant commission has sustained its burden of proof under 8-30g(c). Although the allegations of the plaintiff's complaint occupy a position of reduced importance under the new scheme, they nevertheless help to frame the issues. Subsection (c) first requires that both the commission's decision and the reasons it cites for its decision be "supported by sufficient evidence in the record". The term "sufficient evidence" is the subject of differing views by the parties. The plaintiff argues that this court should adopt Judge Berger's position in TCR New Canaan, Inc. v. Planning and Zoning Commission,6 Conn. L. Rptr. 4, 91 (March 30, 1992) that "sufficient evidence" means the same as "substantial evidence" as defined by our Supreme Court in Huck v. Inland Wetlands and Watercourses Agency, 203 Conn. 525, 539
1987. The defendant, when exposed by the court to the possibility that the "sufficient evidence" standard means something less than "substantial evidence", argued that it was closer to the probable cause standard used in prejudgment remedy cases. See, Ledgebrook Condominium Association v. Lusk, Corp, 172 Conn. 577, 584 (1977). There are still other possibilities such as the "weight of the evidence" or the "clearly erroneous" standard, or even the "reasonable satisfaction" standard adopted recently by the Appellate Court for probation revocation hearings. In State v. Davies, 29 Conn. App. 801 (1993) the court defined this standard "as meaning a rational belief of the trial court that the evidence is adequate or sufficient to prove a violation". (Emphasis CT Page 6068 supplied). In Connecticut Health Facilities, Inc. v. Board of Appeals, 29 Conn. App. 1, 10 (1992) the court applied the substantial evidence rule to the facts found by the zoning authority. The court noted that this rule is similar to the sufficiency of the evidence rule which it applies in judicial review of jury verdicts. Thus, "evidence is sufficient if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred". Id., at n. 4. In a zoning setting, our courts seem to use the terms "substantial" and "sufficient" evidence interchangeably. Stankiewicz v. Zoning Board of Appeals,15 Conn. App. 729, 733, 737 (1988).
As Judge Berger pointed out in TCR New Canaan, supra, the legislative history would indicate that the proponents of the bill had something else in mind. Representative Cibes stated during debate that the sufficient evidence requirement "lowers the level which must be satisfied — the intention is to lower the burden of proof for the community to lower the level of interest which is required. The intent here is to rachet down the level of interest that is for the commission to demonstrate that it is correct." Id. at 100. Thus, it may be argued plausibly that because the legislature is presumed to be familiar with settled rules of statutory construction in the interpretation courts have placed on legislation, Skorpias Properties Limited v. Waage, 172 Conn. 152,155 (1976), the legislature in fact intended to create a new evidentiary standard of review.
Having explored some of the possibilities, the record in this case does not lend itself to a determination of which level of scrutiny is appropriate.
On December 26, 1991, the defendant denied the plaintiff's application and gave five reasons for its decision. On January 9, 1992, the plaintiff filed a modification of its proposal which under subsection (d) is treated as an amendment to the original proposal. The defendant denied the modified application on February 26, 1992 giving five reasons for the denial. This appeal then is from the original proposal as well as from the modified proposal. Dealing with the second decision first, the assigned reasons are as follows: "(1) a double down zoning would not be in the best interests of the area; (2) would result in overburdening the educational system; (3) would adversely affect existing property values in the area; and, (4) it was not supported by the agency to cite its reasons. It would be extremely difficult for a reviewing court to search the record and decide whether the CT Page 6069 public interests of health, safety and other appropriate matters cannot be protected by reasonable changes to the proposed development. That, decision belongs to the agency. It is thus fair to say that an agency that denies an application and doesn't cite the reasons for its decision would clearly be putting its decision in great jeopardy". This court perceives the command of the statute in considerably broader terms. In order to comply with the statute and sustain its burden of proof when it denies an application for an affordable housing development, the zoning authority must specifically articulate through the reasons it gives, how and why each of the precepts embodied in subsections (2), (3) and (4) support its denial. In other words, the assigned reasons must address categorically (1) the necessity to protect a particularly identified public interest or interests; (2) must reflect that the commission engaged in the balancing test dictated by subsection (2); and, (3) must manifest an honest effort to devise reasonable changes to the development that will protect the public interest that is jeopardized by the proposal. A decisional format that presents anything less than this abdicates the zoning authority's solemn responsibility and impedes meaningful judicial review. Nothing less should be required under a remedial statute of this nature. Keyes v. Brown, 155 Conn. 469, 474 (1967). At the same time the reasons need not be in a form to satisfy the meticulous criterion of a legal expert. Protect Hamden/North Haven From Excessive Traffic and Pollution, Inc. v. Planning and Zoning Commission, 220 Conn. 527, 553 (1991).
The court's review of the defendant's assigned reasons will be limited to those which were recited in support of the amended or modified application. This approach is consistent with the plaintiff's prayers for relief. It is apparent upon examination that these reasons wholly fail procedurally to meet the requirements of the statute.
In this analysis we draw from our traditional zoning jurisprudence in applying the rule that "when a zoning commission has stated its reasons . . . the reviewing court ought only to determine whether the assigned grounds are pertinent to the considerations which the authority was required to apply, and whether they are reasonably supported by the record.", First Hartford Realty Corporation v. Planning and Zoning Commission, supra at 543. The action of the commission should be sustained if even one of the stated reasons is sufficient to support it. Zygmont v. Planning and Zoning Commission, 152 Conn. 550, 553
(1965). The key to the application of this test is whether any one CT Page 6070 reason is pertinent to the considerations which the zoning authority was required to apply. Unlike in conventional zoning appeals, the considerations which the authority is required to apply are not limited to 8-2. With the enactment of 8-30g the legislature has created a new set of considerations which the authority is required to apply in affordable housing cases.
While it is obvious that the commission has failed to focus on either subsection (c)(3) or (4) it has made generalized reference to the public interest and so the articulated reasons merit the court's attention.
1. A double down zoning would not be in the best interests of the; area. A double down zoning simply means raising the density not to the next level (R-20/25) but to the level beyond that (R-12). This statement is not unlike the statement made by the Town Council in West Hartford Interfaith Coalition, Inc. v. Town Council of West Hartford, 7 Conn. L. Rptr. 10, 282 (Sept. 28, 1992) wherein the affordable housing application was denied because inter alia, the proposed project was too large or too dense. In that case, the court held that such a reason was insufficient under the statute.
In Huntington Branch NAACP v. The Town of Huntington, 844 F.2d 926,936 (2d Cir., 1988), aff'd. 488 U.S. 15 (1988) the court noted that in a zoning case "a town's preference to maintain a particular zoning category . . . is normally based on a variety of circumstances. But that does not relieve the court of weighing the town's justification against the adverse effect that the plaintiffs would suffer by the denial." Id. at 937. Thus, the commission was bound to specify in reasonable detail what the "interests of the area" were and should have weighed those interests against the need for affordable housing. Rejection of an application to down zone because of its effect on the neighborhood usually implies that increased density will have an injurious impact on it.
In adopting a substantial public interest test, the legislature can be presumed to be aware of the Report of the Blue Ribbon Commission, supra at 1, which discussed both state and federal judicial decisions affecting housing. From that body of law the legislature borrowed the "compelling governmental interest" test and its burden shifting characteristics and devised, its own "substantial public interest" test. See, Kennedy Park Homes Association, Inc. v. city of Lackawana, 436 F.2d 108 (2d Cir. 1971); U.S. v. City of Black Jack, Missouri, 508 F.2d 1179
(8th Cir. 1975); Huntington Branch NAACP v. Town of CT Page 6071 Huntington, supra.
In U.S. v. Black Jack, Missouri, the city enacted an ordinance prohibiting construction of any multiple family dwellings. In doing so the city articulated several governmental interests to justify the ban. Among them were (1) prevention of devaluation of single family homes in the neighborhood, and (2) prevention of overcrowding of schools. While the court held the record did not support the city's claim that the ordinance would result in either condition, it outlined a three part test for determining whether any of the reasons advanced rose to the level of a compelling governmental interest. That test requires both a qualitative and quantitative analysis. Id. at 1187, n. 6 and 7. As applied to this, case neither analysis is possible because of the commission's failure to describe in any detail the "interests of the area."
A review of the record indicates that the commission was concerned about increased density. Yet the plan of development adopted by the very same commission in 1991 states that this type of development ought to be located in areas where there is "ease of access, public water and sewer, low impact to natural resource systems and compatibility with surrounding uses". Item 38, p. 30. The plan of development map recommends the subject property for high density residential (R-12), the very classification which the plaintiff has requested. Had the commission made the consistency finding required by P.A. 91-398, effective almost three months prior to the commission's initial decision and about five months prior to the decision on the modified application, it might not have ignored its own plan of development.[5]
2. Would result in overburdening the educational system. This is essentially a fiscal impact consideration. Judge Berger dealt with a similar claim in T. C. R. New Canaan. supra. The issue there as here was whether a zoning commission has the authority to deny an application for a change of zone which would result in financial distress to a school system because of an unplanned influx in students. Such authority depends upon whether fiscal impact is a pertinent consideration for a commission under 8-2. Capalbo v. Planning and Zoning Board of Appeals, 208 Conn. 480, 490 (1988). Neither 8-2 nor 38-30g expressly or by fair implication authorizes a zoning commission to reject an application for affordable housing because of the fiscal impact which the development might have on the municipality's school system. See, Beech v. Planning and Zoning Commission, 141 Conn. 78, 84 (1954). Moreover, the record in this case is totally devoid of any evidence CT Page 6072 to support this conclusion.
3. Would adversely affect existing property values in the area. Protection of property values has long been an acknowledged purpose of zoning. Karen v. East Haddam, 146 Conn. 720, 729 (1959). Thus, in a given case, a commission may have a legitimate public interest in protecting property values. In this case not only has the commission failed to articulate the basis for this conclusion but the record contradicts the statement. The only evidence on the issue is from John Albano, an appraiser who concluded that the development would have no adverse affect on the neighborhood. Under 8-30g the significance of protecting property values as a substantial public interest falls to a lower level in the hierarchy of importance. It is the view of this court that the legislature has already determined that an affordable housing development should not, solely by its nature, be considered harmful to property values.
4. It was not supported by sufficient evidence contained in the record. This is an apparent attempt to impose upon the applicant the burden of proof imposed upon the commission by 8-30g(c). Such an assertion does not qualify as a reason cognizable under our law of zoning.
Finally, the commission stated "that the goals of the application could have been served by a zoning amendment which did not contain all of the features of the R-20/25 zone." such a statement makes no sense in this context. If the statement contained a typographical error (no effort was made by the commission to correct it), then it would make better sense if "not" were omitted or if "R-12" were substituted for "R-20/25". There is considerable sentiment in the record to the effect that the applicant did not need the R-12 zone but could have produced an economically viable development in the R-20/25 zone. To the extent that this is what the commission intended the court will consider it.
Section 8-30g(d) authorizes a commission to deny an affordable housing application but at the same time to articulate its objections to the proposal. Perhaps that is what the commission had in mind when it said in its initial decision that "affordable housing can be addressed on the subject parcel by a proposal which does not disrupt the area to such degree." Even if this were an appropriate response under the statute it failed to specify the particular zone classification that it would have found acceptable. CT Page 6073 It is too late to specify this objection in its decision on the modified proposal.
There is authority for the proposition that ordinarily a zoning commission in under no obligation to down zone unless it appears that the property cannot economically be used under one or more of the other zonal classifications. Zygmont v. Planning and Zoning Commission, supra at 555-556. Such a rule is inconsistent not only with the burden shifting mechanism of the statute but with the legislative purpose of promoting expeditious fulfillment of its ameliorative purpose. Contrary to the defendant's claim made in its brief, the applicant in under no obligation to demonstrate that its way is the only way or to submit to a lesser density simply because the commission thought it more appropriate. In the same category is the plaintiff's brief-made suggestion that because there has been a decline in the cost of condominiums due to economic conditions the plaintiff should look to this housing stock for partial fulfillment of the need. The commission failed to identify any substantial public interest to justify this position.
From the foregoing discussion it is obvious that the Southington Planning and Zoning Commission has failed to satisfy its burden of proof within the meaning of the statute and therefore the plaintiff's appeal is sustained. This conclusion obviates the need to address the plaintiff's remaining claims.
In fashioning relief in the TCR New Canaan case, supra, Judge Berger thoroughly discussed the status of our decisional law concerning the extent to which the court is empowered to order specific relief in a zoning appeal. This court adopts that analysis. However, unlike TCR New Canaan no salutary purpose would be served by a remand. As a matter of law there was but a single conclusion which the commission could reasonably have reached. Accordingly the commission's decision is reversed.
MOTTOLESE, J.