DOWLER, APPELLEE, *v*. BOARD OF REVIEW, BUREAU OF UNEMPLOYMENT COMPENSATION, ET AL., APPELLANTS.

(No. 2983—Decided January 13, 1966.)

*Mr. Raymond S. Caulfied,* for appellee.

*Mr. William B. Saxbe,* attorney general, *Mr. Harry G. Ebeling* and *Messrs. Cowden, Pfarrer, Crew & Becker,* for appellants.

KERNS, J. The sole issue in this appeal involves statutory construction and nothing else. The question presented is whether an employee who is "automatically retired" pursuant to a collective bargaining agreement has "quit his work without just cause" or has been "discharged for just cause in connection with his work" within the meaning and contemplation of Section 4141.29 (D) (2) (a), Revised Code.

Retirement contracts and unemployment compensation statutes are in no way interdependent. Indeed, they are not even remotely related. While the one is stamped private, the other clearly involves the public interest. For this reason, there ap-

pears to be no valid reason to assume that the Legislature considered retirement contracts when it used the words "quit" and "discharged" in Section 4141.29, Revised Code. More realistically, it appears doubtful that the Legislature had retirement contracts in mind when it enacted the applicable statute. Hence, the specific question presented here is whether the language actually employed is broad enough, without any particular legislative design, to include the separation from employment caused by a retirement contract.

Ordinarily, the wholesome character and mutually binding nature of such contracts is recognized as a good reason and just cause for the termination of employment. It is difficult therefore to comprehend how it may be said that the employee in the present case quit her work *without just cause.* The cause is the contract, and, after execution, there is nothing voluntary about a contract. Performance is a matter of compulsion.

In our opinion, it also requires a burdensome strain on the language employed in the statute to say that the employee in the present case was discharged for just cause *in connection with her work.* Given ordinary meaning, this phrase points to an assembly line and not to a negotiation table. And there is nothing in this record to imply any malfeasance, misfeasance or nonfeasance by the employee on the job or in connection with her work.

In using the words "quit" and "discharge," the statute under consideration, by its own terms, presupposes a voluntary act on the part of either the employee or the employer, but nothing voluntary was either required or necessary at the time of retirement in the present case. Rather, by the express terms and controlling force of the contract, the termination of employment was automatic at the prescribed age without any further affirmative action.

We are of the opinion, therefore, that the statutory provisions relied upon by the appellants have no application to the situation described here.

This conclusion is further substantiated by reference to Section 4141.31, Revised Code, which was enacted in full view of Section 4141.29, Revised Code, and provides that benefits payable under the Unemployment Compensation Act shall be reduced by the amount of remuneration a claimant receives

from a retirement plan. The Legislature thus recognized that an employee might receive both unemployment compensation and retirement benefits at the same time.

Furthermore, Section 4141.32, Revised Code, provides that "no agreement by an employee to waive his right to benefits is valid." And again, it appears doubtful that the legislative mind encompassed retirement contracts when this provision was enacted. But, if Section 4141.29, Revised Code, is construed as suggested by the appellants, the retirement agreement does enter the picture and is tantamount to a waiver by the employee of a right to benefits to which she would otherwise be entitled. It is not sufficient to say that this waiver provision does not apply because no right exists. This only begs the issue because a right does exist in the absence of the agreement. The agreement to waive mentioned in Section 4141.32, Revised Code, clearly pertains to future rights which might inure pursuant to the Unemployment Compensation Act and not to any present or existing rights, because it is obvious that no right to benefits exists prior to or during the term of employment.

Although the philosophical arguments about "voluntary removal from the work force" and "the spirit of the legislation" are interesting, there is nothing in the Unemployment Compensation Act which precludes the employee in the present case from seeking employment, and, as a matter of fact, it is well known that retirement benefits frequently do no more than supplement the amount of income actually needed to maintain reasonable living standards.

In summary, therefore, it would perhaps not be an oversimplification to say simply that the employee in the present case did not quit her job. Neither was she discharged by her employer. By virtue of the contract and the express language used therein, her retirement was automatic. That which is automatic requires no action. The terms of the statute and the terms of the contract are mutually exclusive.

The judgment will, therefore, be, and hereby is, affirmed.

*Judgment affirmed.*

CRAWFORD, J., concurs.

SHERER, P. J., dissenting. The Unemployment Compensation Act of Ohio is designed to provide compensation for workers who ordinarily have been workers or would be workers now but for their inability to find suitable jobs. In *Leach, Admr.*, v. *Republic Steel Corp.*, 176 Ohio St. 221, 223, the Supreme Court said that the purpose of the Unemployment Compensation Act and the Fund is to enable unfortunate employees, who become and remain involuntarily unemployed by adverse business and industrial conditions, to subsist on a reasonably decent level.

A claim for benefits is to be denied where a claimant voluntarily quits without just cause or where he is discharged for just cause in connection with his work, as provided in Section 4141.29 (D) (2) (a) of the Revised Code. The claim here was denied by the Board of Review because claimant quit voluntarily without just cause. The board's decision denying the claim is here for review, not the reason given for the denial. If the evidence shows just cause in connection with her work justifying a denial of benefits, or if it shows that claimant voluntarily quit for just cause, the board's decision should be affirmed.

Section 1 of the National Labor Relations Act, 49 Stats. at L. 449 (1935), as amended in 61 Stats. at L. 136 (1947), Section 151, Title 29 U. S. Code, insofar as pertinent here, provides:

"It is hereby declared to be the policy of the United States to eliminate the causes of certain substantial obstructions to the free flow of commerce and to mitigate and eliminate these obstructions when they have occurred by encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection."

The agreement here provides as follows:

Section 3, sub-section (a):

"An employee age 68 or older shall be automatically retired as of the last day of the month which includes the date the employee attains the age of 68."

Section 3, sub-section (c):

"An employee may remain actively employed after the automatic retirement age or date of sub-section (a) above only with the approval and at the option of the corporation. No service beyond age of 68 shall be credited."

It must be said that the agreement here was negotiated by the parties with reference to the conditions of claimant's employment and that the agreement represents the voluntary agreement of such employee to quit at age 68 since the employer did not exercise its option to continue claimant's employment thereafter. The majority opinion states that the cause of the quit here was the contract and that there is nothing voluntary about a contract; that performance is a matter of compulsion. I agree that if claimant had not voluntarily quit at age 68 the employer could have compelled her retirement. But, that situation never developed here. By the terms of the agreement, Section 3, sub-section (c), claimant might have remained employed with the approval of the employer. Claimant did not ask to continue her employment. She had accepted the benefits of the agreement from the time of its execution in the form of increased wages and other benefits and has accepted the pension provided by the agreement. At no time did she attempt to repudiate her voluntary agreement to quit at age 68. I fail to see how she, having accepted the benefits of the agreement, can be heard to say that her quit was not voluntary. I think that claimant quit her work voluntarily.

The payment of unemployment compensation benefits materially affects the employer's unemployment experience, thus increasing its contribution burdens. It seems to me that, insofar as claimant's relationship to this employer and its contribution burdens is concerned, the agreement contemplates a voluntary withdrawal from the work force for which no benefits can be paid under the Unemployment Compensation Act.

There remains the question whether claimant's voluntary quit can be said to be *without just cause* so as to preclude her from receiving benefits. In effect, the majority opinion states that even if it could be said that she quit voluntarily it cannot be said that she quit without just cause.

The New Jersey Supreme Court, in *Krauss* v. *A. & M. Karagheusian, Inc.,* 13 N. J. 447, 100 A. 2d 277, had a similar case under consideration. In that state a claimant was disqualified for benefits if he left work "voluntarily without good cause." In that case the agreement allowed an employee then 68 years of age the option of retiring on pension, or, if the union and company agreed, to continue in his employment. That court said that "where a 68-year-old employee had alter-

native of continuing in his employment if union and employer consented, or of retiring and taking pension, his choice of pension made his leaving 'voluntary without good cause' within Unemployment Compensation Act so that he was disqualified from receiving unemployment compensation benefits.'' In that case, as here, claimant did not request that he be continued in his employment at retirement age. The court said that what is ''good cause'' must reflect the underlying purpose of the Act to relieve against the distress of involuntary unemployment.

In the case before us it is conceded by counsel for claimant that retirement at age 68 is not automatically required at age 68. It must be concluded then that claimant, not having requested that she be continued in her employment as she had a right to do under the agreement, has voluntarily quit her work without just cause so as to disqualify her for benefits.

I see no merit in claimant's argument that the agreement violates Section 4141.32 of the Revised Code, which provides that no agreement by an employee to waive his right to benefits is valid. Before one can waive rights under a statute, it must first be determined that one is entitled to those rights. The agreement here is an agreement respecting the conditions of claimant's employment and to establish pension rights and is not prohibited by law.

The judgment of the Common Pleas Court should be reversed and the decision of the Board of Review should be affirmed.

If I am in error in my conclusion that claimant's voluntary quit was without just cause, then it would follow that benefits should be denied because claimant's employment was terminated by the employer for just cause in connection with her work. Counsel for claimant states that the employee doesn't have to retire under the terms of the agreement but that the guiding force here, that ought to be the determining factor, is the option of the company in Section 3, sub-section (c). The decision of the Board of Review is before us for review, not the reasons given by the board for its decision.